LOTTINGER, Judge.
This is a tort action wherein the plaintiff, Ella Brown, seeks to recover damages for the death of her husband, Melvin Mike Brown, which occurred when a cab in which he was riding crashed into the rear of a truck owned by S. A. Bourg & Sons, Inc. on the Morgan City bridge spanning the Atchafalaya River, during the early hours of October 16, 1955. Negligence is charged against the cab driver, Charles Ruffin, in following the truck too closely, in failing to see pipes projecting from the rear thereof and in failing to apply his brakes in time to avoid the collision. Negligence is charged against the owner and driver of the truck in failing to have the truck properly lighted, in having the pipes extend beyond the rear and in failing to give warning that the truck was about to stop. Joined as defendants are Bourg, the owner of the truck, Edward Adams, its driver, the B. and H. Cab Co., the partnership owning the cab and the individual members thereof, Raymond Clark and Allen Darnell.
Both sets of defendants answered denying any negligence on their part. The case was then tried, following which judg *793 ment was rendered in favor of the plaintiff and against the cab company and Clark and Darnell but dismissing the suit insofar as Bourg and Adams were concerned, and the matter is before us on an appeal taken by the plaintiff from the latter portion of the judgment. The last defendants do not appear to have either appealed or answered the appeal.
There can be no question concerning the negligence of Ruffin, the cab driver. This witness stated that he was driving from 30 to 35 miles per hour and saw a light on the cab of the truck but no lights on the trailer nor the pipe on it despite the fact that his lights were on and the weather clear. He never applied his brakes before hitting the trailer and could offer no reasonable explanation for doing so.
We come now to the question of negligence, if any, on the part of the remaining defendants. The truck driver, Edward Adams testified that he was driving a Ford truck described by him as a “Tandem lowboy” which was loaded with pipe. This pipe, he stated, projected beyond the rear of the low-boy about a foot. There are two tail lights on each side of the rear of the low-boy with 3 smaller ones in the middle. They were burning as he crossed the bridge, as were his clearance lights which were located on either side of the low-boy. As he crossed the bridge he saw another of his company’s trucks approaching and he started slowing down in order to flag the truck down in order that his helper might board the other truck in accordance with instructions previously received by him, and that is when he was struck from the rear by the car in which the deceased was riding. He stated definitely that when he was hit he had not stopped but was still traveling at about 20 miles per hour. The back end of the trailer was struck and after that it rolled some 20 to 30 feet before he could bring it to an actual stop. His lights were on dim as were those of the company truck which approached him. He had no lights on the back of his cab, the lights previous- ' ly referred to being on the low-boy itself. After the collision, two or three of these were still burning. The approaching truck did not stop but continued on down the west side of the bridge.
On cross examination, the witness stated that he had loaded his truck with pipe at Breaux Bridge. This operation took approximately an hour and he left Breaux Bridge at about 10 o’clock that night. One Whitney Engeron was with him at the time. The weather on the night of the accident was clear. When asked if there was any fog at all, the witness said that there was none that he could remember. When asked the length of the truck body itself, the witness stated that he did not know, but that the attachment in the back was some 30 feet long with 8 wheels. He did not remember how many pipes were loaded on the truck but said that it was 2 inch pipe about 26 to 28 feet in length. He explained the reason ■ for the pipe projecting beyond the rear of the trailer because where the trailer hooks onto the truck there is a “goose neck” which actually takes up some of the bed of the trailer. The taxi was about 100 feet to his rear when he first saw it. It had lights on the top of the cab as well as its headlights. He stated that his pipe could not hide his tail lights and that they could be seen from the rear. He said that the driver of the approaching truck was one Tilden Chiasson and that the accident happened before they met. Chiasson just slowed down and came back to the scene on foot. The witness stated that he was not using his signal lights ,on the back of his truck because he did not need them. After the collision the taxi remained in its east or right 'hand lane. The witness stated that the windshield was broken but that he did not notice whether any of his pipes had gone into the windshield. There was no other traffic on the bridge at the time that he could remember. The decedent appeared to be dead when he removed him from the taxi. He repeated that he was moving when the collision occurred and that the taxi had pushed his *794 truck to some extent. The witness recognized the Chiasson truck when it was approximately 100 feet from him at which time he commenced flagging him down. He had not applied his brakes at all before the taxi hit him.
Freddie Paul Ledet, State Trooper, testified that he investigated the accident. He arrived at the scene some 35 minutes after the occurrence of the accident and found the truck facing east and the taxi likewise facing east some 20 to 30 feet to the rear. Both vehicles were on the Morgan City side of the bridge in their right hand lane on the first span. The pipes on the truck projected from 1 to 1 Vi feet.
When asked if the truck was full of mud, the witness stated that the lights were visible and that while one had been damaged and was not burning, that the other was burning when he was there.
On cross examination the witness stated that the weather was clear and the condition of the road good. He stated the bridge was lighted on the walkway which is on the right side traveling east. The witness repeated that all lights with the exception of the broken one were burning when he arrived and when asked if it were possible that the lights could have been cleaned before his arrival, he replied, “No, the truck itself was none too dirty nor the lights.”
Timothy Blakeman, police officer of Morgan City, testified on behalf of the defendant. He stated that on the night of the accident, he and Officer Lefler received word of the accident and proceeded to the scene immediately. They parked between the taxi and the truck, which were both facing east, and when asked if there were lights on the rear of the trailer, answered in the affirmative. He stated that there were pipes on the trailer and that they extended about a foot or so beyond the back of same.
On cross examination he stated that they went to the accident immediately after being notified, and that when notified they were only about 3 blocks from the bridge so that they evidently arrived at the scene not over 10 minutes from the time of the accident. When asked where the accident occurred, it was stated that it was about 2 blocks or better from the foot of the bridge on the Morgan City side. This witness stated that he did not make a detailed investigation of the vehicles but proceeded to direct traffic. When asked if he recalled seeing Raymond Clark, he said that he did not.
Lawrence Guidroz, called on behalf of the defendant, testified that he was employed by one of S. A. Bourg Company’s garage as a mechanic. He identified two photographs, B-l and B-2 and stated that they were of the low-boy trailer involved in the accident. He stated that this was the only low-boy of that type owned by Bourg and that no repairs were necessary as the result of the accident. The witness stated that the photograph depicted certain lights on the trailer but that there were three additional lights which did not show in the picture as they had presumably been broken off in the accident. These particular three lights he stated were in place and working when the truck left but were missing when it returned. He stated that it was a. policy of the company to check the lights every time it left-and stated that the cluster of three lights, previously referred to, together with one on the extreme right, one on the extreme left, and a third one from the left, were all controlled by the switch which operates the front lights. He stated that there were lights on the front end of the cab, one on each side above the windshield, but that’there were no lights on the rear portion of the cab or tractor which pulled the trailer. The length of the trailer he stated was 25 feet 6 inches. The lights on the rear of the trailer were factory equipment, except the three cluster lights, which was something that Bourg had added. •
Tildón Chiasson, testifying on behalf of the defendant, Bourg, stated that on the night of t-he accident, just previous thereto, he was driving a Bourg truck traveling *795 west. He stated that just before the accident as he was climbing the bridge, he saw the other truck coming with the driver trying to flag him down and that in response to the signal he began to slow down. As he did so, he looked into his side mirror and then as he turned back to glance ahead, he saw the two headlights of the cab crash into the rear of the truck. After the accident he stopped and got out and then went down to a filling station at the foot of the bridge and asked the man there to send for the police and an ambulance. It was not until a good while later that he went back to the scene of the accident.
On cross examination, this witness stated that Adams was still proceeding when the accident occurred. He stated that he was going at about 15 to ZO miles per hour when he first saw Adams and that the latter was going at about the same speed.
The testimony of Whitney Engeron, the person who was riding with Adams at the time of the accident was to the effect that when they left Breaux Bridge, the lights on the low-boy trailer were on. He was asleep at the time of the accident and knew nothing of how it happened.
Raymond Clark testified that he went to the scene of the accident very shortly after its occurrence and that he found no flags on the truck or the pipes nor any lights on the trailer. He identified a picture introduced into evidence as Exhibit C-l, as having been taken by him shortly after he arrived at the scene of the accident. This witness stated most emphatically that this photograph depicted the exact position of the truck as he found it.
The trial judge apparently did not place much value on Clark’s testimony, nor do we. While, as just stated, he testified that his photograph depicted the position of the truck on the bridge, a close examination reveals that this picture had to have been taken after Bourg’s truck had been moved, for it reveals grass and trees on one side of the road and the lights of what appears to be the Morgan City Court on the other side, neither of which, would, of course, appear in a picture taken on the bridge itself.
We are of the opinion that the testimony preponderates in favor of the defendant Bourg and its employee, Adams, and that, therefore, the judgment of the Lower Court exonerating them from liability is correct. The trial judge awarded damages in the amount of $12,800. As the defendants B. and H. Cab Company and the members thereof have not appealed, nor answered the appeal, the judgment cannot be amended in their favor. The plaintiff, on this appeal, has raised no question as to the correctness of the amount awarded and the judgment will, therefore, stand affirmed.
Judgment affirmed.