118 So.2d 891

**Ella BROWN**

**v.**

**S. A. BOURG & SONS, INC., et al.**

No. 43979.

March 21, 1960.

Blanchard & Blanchard, Farrell A. Blanchard, Donaldsonville, for plaintiff-relator.

Voorhies, Labbé, Voorhies, Fontenot & Leonard, Lafayette, for defendants-respondents.

VIOSCA, Justice.

Plaintiff, as the surviving widow of Melvin Brown, brought suit to recover dam-

ages for the death of her husband which occurred when a taxicab in which he was riding as a passenger crashed into the rear of a truck and trailer on the Morgan City Bridge spanning the Atchafalaya River during the early hours of October 16, 1955. Plaintiff sought a solidary judgment against S. A. Bourg & Sons, Inc., hereinafter called Bourg, owner of the truck, Edward Adams, the driver thereof, the B. & H. Cab Company, a commercial partnership, owner of the taxicab, and the individual members of this partnership, Raymond Clark and Allen Darnell, alleging that they were joint tort-feasors and that their negligence, or negligence imputable to them, caused the death of her husband. After trial in the district court there was judgment in favor of the plaintiff and against the B. and H. Cab Co., and its members, Clark and Darnell, in the amount of $12,-800 with legal interest from judicial demand. No appeal was taken by these defendants. The district court dismissed the suit as to Bourg and its driver Adams. On appeal by plaintiff to the Court of Appeal from the judgment of the district court insofar as it dismissed the suit against Bourg and its driver Adams, that court affirmed the judgment [1] and plaintiff applied for and was granted a writ of certiorari to this Court.

It is the contention of plaintiff that the district court and the Court of Appeal committed error in failing to find negligence on the part of the driver of Bourg's truck and in failing to grant a solidary judgment in favor of plaintiff against the owner and driver of the truck as joint tort-feasors with the owners of the cab. The negligence of the driver of the cab is no longer an issue as no appeal was taken from the district court judgment by the cab company and its members, and they have not filed any answer to plaintiff's appeal. The only issue presented is whether the defendants, Bourg and its driver Adams, were guilty of any negligence at all which had causal connection with the accident.

The specific acts of negligence alleged by plaintiff against Bourg and Adams are that the driver of the truck failed to have the truck properly lighted as provided by the mandatory provisions of LSA–R.S. 32:280, and failed to give warning that the truck was about to stop on the bridge.

The accident herein occurred before the daylight hours (between 3:00 A. M. and 3:25 A. M.) of October 16, 1955, on the Morgan City Bridge, a two lane bridge which spans the Atchafalaya River on Highway 90. The truck and taxicab were traveling east, crossing the bridge from Berwick to Morgan City when the taxicab ran into the rear of the truck on the descending portion of the bridge. The truck, a Ford Tandem Low-boy, was carrying a

1. 99 So.2d 792.

load of line pipes which extended a foot to a foot and a half beyond the rear of the trailer truck. Although the truck had the usual taillights and three small red lights in the middle of the rear of the truck,[2] there was no light on the pipes which extended over the rear. The truck driven by Adams was approaching a truck, also owned by Bourg, coming from the opposite direction. Adams was in the process of flagging down the approaching truck in order to transfer a rider from the Adams truck to the approaching truck. There is much dispute (as reflected in the opinions of the district court and the Court of Appeal) as to whether the truck driven by Adams had actually come to a stop on the bridge before being struck by the cab, or whether it was in the process of slowing down when it was struck.

Of importance to the question of negligence on the part of Bourg and its driver Adams is the following provision of LSA-R.S. 32:280:

"When any part of the load, coupling, or other object on a vehicle shall extend beyond the rear bed of the vehicle body, there shall be displayed at the end of such load, coupling, or object in such a way as to be clearly visi-

ble at all times from the rear a red flag, at least twelve inches both in length and width. Between one half hour after sunset and one half hour before sunrise, *this signal shall be a red light, plainly visible under normal atmospheric conditions for at least five hundred feet from the rear.*" (Italics ours.)

Although defendants contend the truck was properly lighted, it is admitted that no red light was attached to the portion of pipe extending beyond the rear of the truck. The statute is specific that not only must the red light be so attached but it must be "plainly visible under normal atmospheric conditions for at least five hundred feet from the rear." These conditions were not met in the present case. Failure to comply with the mandatory provisions of a traffic law enacted in the interest of safety is negligence per se, and it is actionable negligence if it has causal connection with the accident.[3]

In Holloway v. Pure Oil Co., 17 La.App. 584, 135 So. 381, 383, it was held that the failure to provide an effective signal as required by statute makes the owner of the truck guilty of "gross and inexcusable neg-

2. This is one of the disputed facts, but we are accepting the findings of the district judge and the Court of Appeal on this point.

3. 13 Tulane Law Review 297; Hollabaugh-Seale Funeral Home, Inc. v. Standard Acc. Ins. Co., 215 La. 545, 41 So.2d 212; Stuckey v. Hayden, La.App., 3 So.2d 443; Smith v. Texas & Pac. Ry. Co., La. App., 189 So. 316; Hataway v. F. Strauss & Son, Inc., La.App., 158 So. 408 and the cases cited therein.

ligence". This case interpreted the provisions of Subsection b of Section 44 of Act No. 296 of 1928 which has been incorporated into the Revised Statutes under Title 32 as Section 277. Section 277, relative to a signal on towing vehicles, is identical in scope with Section 280. Both of these sections provide that the signal of a red light must be plainly visible under ordinary atmospheric conditions for a distance of at least 500 feet.

 Adams was bringing his truck to a sudden and unexpected stop on a bridge at a point where traffic approaching from the rear would not ordinarily expect one to slow down or stop. Although he was in the act of flagging down the truck approaching from the front with a hand signal, he admits that he did not give any signal to traffic in the rear by the use of his rear signal lights although his truck was equipped with such signal lights. These lights would have been more visible at night than the waving of his hand. The extending pipes on which there was no light came in contact with the head of the deceased.[4] Under these circumstances we conclude that Adams and Bourg were negligent and that their negligence had a causal connection with the accident, and, accordingly that Bourg and Adams should be held solidarily liable with the other defendants.

Ordinarily we remand cases for the assessment of damages, but because of the way in which the trial judge has computed them in this case, and so that there will be no misunderstanding as to how they should be computed, we will fix the amount ourselves.

In reaching his conclusion that the damages suffered by plaintiff amount to $12,800, the district judge in his opinion said:

"The plaintiff widow itemizes the $45,650.00 she claims as being $35,000.00 for loss of the earning capacity of her husband, $10,000.00 for the loss of his love, affection and companionship; and $850.00 as the expense of his funeral and its incidentals. She makes no claim on behalf of their five children.

"As surviving widow she is not entitled to all of the earnings of her husband during the period of his life expectancy. She is only entitled to recover for the support she could reasonably expect to have received from him had he lived. During the several months before his death, it is unlikely that the decedent provided his wife and children with all the support they required. He was employed as a fisherman on a pogy boat that was fishing in Louisiana waters. He was seldom home. He sent money to his family

4. This is not conceded, but the weight of the evidence confirms this.

irregularly and the amounts varied. These amounts evidently were intended to provide for the support of the children as well as the wife. The wife was employed part-time in conducting a kindergarten school operated in connection with her church.

"The decedent was 52 years old at the time of his death and it is alleged that his life expectancy was 19.49 years. For the purpose of computation we can consider this figure to be 20 years.

"It is very difficult to arrive at the amount that the decedent had been providing or would have provided in the future for the support of his wife. But I believe that it is safe to conclude that he had been providing about $500.00 per year for her support and that he would have continued to do so had he not died. With a life expectancy of twenty years, the anticipated contribution he would have made toward the support of his wife amounts to $10,000.00.

"As previously mentioned the decedent was seldom home. It was intimated during the trial that he and his wife were separated. The wife denied the accusation and there is no evidence to contradict her. However, they were seldom together and it is apparent that there might have been love and affection between them but not much companionship. To place this loss at $2,000.00 would be charitable to the plaintiff. It seems however, that she is entitled to something for this loss and that sum should be amply adequate."

To this amount of $12,000 the trial judge added $800 as the cost of the funeral.

██ The district judge was in error in computing the loss of support by multiplying the average annual contribution of the decedent to the support of his wife by the number of years of the life expectancy of the decedent. He made no allowance for discount on the advanced payments.[5] There are likewise other factors to be taken into consideration. The life expectancy of

5. Under the Louisiana Workmen's Compensation Act where lump sum settlements are made, the law provides for a discount rate of 8%. LSA–R.S. 23:1274 provides: "The amounts payable as compensation may be commuted to a lump sum settlement by agreement of the parties after having been approved by the court as reasonably complying with the provisions of this Chapter provided, that in making such lump sum settlement, the payments due the employee or his de-

pendents, shall not be discounted at a greater rate than eight per centum per annum." In calculating the value of property subject to usufruct or annuity for inheritance tax purposes LSA–R.S. 47:2405 uses a compound interest rate of 6% per annum. The legal rate of interest in Louisiana is 5%. LSA–C.C. Arts. 1938, 2924; Code of Practice, Art. 554. See Fontenot v. National Transfer Company, La.App., 99 So.2d 795.

the survivor, the divorce rate, the percentage of remarriages of widows, particularly to second husbands whose earnings are greater than those of the first, the condition of the health of the decedent, his possible retirement, the possibility of an increase or decrease in his annual earnings, and the change in the value of the dollar over a long period of years are among other factors to be taken into consideration.

The monetary damages resulting from loss of support cannot be calculated with mathematical exactitude. They are speculative in nature and as in the case of damages for loss of love and companionship, mental anguish and other damages of that character, much discretion must be left to the judge or jury.[6]

Considering all of the circumstances of this case, we believe in allowance of $6,000 for loss of support is ample. The district judge was correct in saying that an allowance of $2,000 for loss of love and affection and companionship would be charitable to the plaintiff.[7]

■ The exact amount of the funeral expenses as shown by the record is $731.[8] These three items of damages together amount to $8,731 and plaintiff is entitled to judgment in this amount against Bourg and Adams, this judgment to be in solido with that rendered against the other defendants.[9]

6. LSA–C.C. Article 1934 dealing with the assessment of damages in cases of offenses and quasi offenses provides:

"Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.

"*In the assessment of damages* under this rule, as well as *in cases of offenses, quasi offenses,* and quasi contracts, *much*

*discretion must be left to the judge or jury,* while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor." (Italics ours.) See Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445; Tolle v. Higgins Industries, Inc., 212 La. 173, 31 So.2d 730. For discussion of this subject see 20 Louisiana Law Review 357.

7. The record shows that eleven months after her husband's death plaintiff gave birth to an illegitimate child which she concedes was by another man.

8. The funeral bill was $701, cost of ambulance service $10 and added expenses incurred by plaintiff $20, making a total of $731.

9. As no appeal was taken by the other defendants from the judgment for $12,800, we cannot disturb that amount.

For the reasons assigned the judgment of the Court of Appeal is reversed and the judgment of the district court insofar as it dismisses plaintiff's suit against S. A. Bourg & Sons, Inc., and Edward Adams is likewise reversed, and it is now ordered that there be judgment in favor of plaintiff Ella Brown and against S. A. Bourg & Sons, Inc., and Edward Adams in solido in the sum of $8,731 with legal interest from judicial demand, and all costs, this judgment to be likewise in solido with that rendered against the other defendants.

118 So.2d 896