BLANCHE, Judge.
Plaintiff, Mrs. Juanette Gant, filed a suit for damages against defendants, Sun Erection Company, Inc., and its liability insurer, Aetna Casualty & Surety Company, for the alleged wrongful death of her husband, James E. Gant, Jr. Mr. Gant was employed by Fisk Electric Company, Inc., as an apprentice electrician, and with other employees was engaged in doing electrical work at a bulk unloading facility being constructed for Allied Chemical Corporation at the latter’s plant near Geismar, Ascension Parish, Louisiana, on September 8, 1966. The structural steel work on the facility was performed by Sun Erection Company, Inc., hereinafter referred to as “Sun.” On the above indicated date and while engaged in his employment duties, Mr. Gant sustained a fall from the structural steel, resulting in severe personal injuries and ultimately in his death a. few days later. Plaintiff filed a survival action to recover damages sustained by her husband from the time of the accident until his death as well as a wrongful death action in her behalf. Liberty Mutual Insurance Company, the workmen’s compensation insurer of Gant’s employer, Fisk Electric Company, Inc., intervened to recover workmen’s compensation benefits which it had paid. Judgment was initially rendered in favor of the defendants, but a new trial was granted limited to reargument only, at which time judgment was rendered in favor of the plaintiff in the sum of $104,040.75, which judgment against the Aetna Casualty & Surety Company was limited to its policy limits of $100,000, and judgment was further rendered in favor of intervenor in the amount of compensation death benefits and medical expenses which it had paid. From this judgment defendants perfected this suspensive appeal. We affirm.
The trial court made the following pertinent findings of fact and conclusions therefrom:
“The Court has reached the following factual conclusions in this matter. The *778 deceased lost his balance, fell and sustained fatal injuries. The sag bar in question was not properly installed in that a nut was left off one end permitting it to come out of the hole in the beam if and when force was exerted against it in a particular way. The nature of and the amount of force, pressure, torque or movement against the sag bar necessary to dislodge it would vary depending upon the exact position of the bar in relation to the beam at the time. The sag bar was customarily used by workers for support or balance in carrying out various duties. The improper installation of the sag bar could not be observed by workmen in the area. Prior to the accident the sag bar appeared to be in place. Following the accident one end of the sag bar had dropped down to a position judged to be approximately one foot below the hole in the beam through which it should have been resting with a nut securing same. No one observed any contact by the deceased with the sag bar in question. It must be concluded that he did come into contact with the bar or it would not have been dislodged. The duties and work of the deceased required him to be in the immediate vicinity of the sag bar at the time he fell.
“Gentlemen, this is not a res ipsa case. The question here is the relationship of the sag bar to the accident, that is, the causal connection, which, of course, must be proved by a preponderance of the evidence. We do not believe that the nut was removed after installation. We believe that the defendant negligently left the nut off the sag bar. We think this negligence is definitely proven in spite of the testimony relative to spot painting, which we feel to be very inconclusive. The question is whether this negligence was the proximate cause of the accident.” (Oral Reasons for Judgment rendered June 2, 1969, Record, pp. 65, 66)

“Before the Court this morning is a motion for a new trial limited to rear-gument only. Let the record show that the Court grants the motion for a new trial limited to reargument. Now, in addition to the findings of fact which the Court previously dictated into the record at the conclusion of the last arguments we add this fact. The Court has found that the sag bar in question was over the head of the decedent as he worked and any contact that he had with the bar would have had to have been with his hand. In finding this additional fact the Court has reviewed the photographs, has reviewed the testimony of the various coworkers and we believe that this fact is amply supported by the record.
“Now, the Court believes that it was in error in two respects in its previous decision in this matter. First, the Court believes that it was in error in applying a standard relative to what constitutes a preponderance of the evidence. That is, the Court believes that too strict a standard was applied by this Court. We now hold that what we have here is a strongly supported probability that the decedent’s fall was caused by the sag bar coming out of its mooring due to the negligence of the defendant, Sun Erection Company, Incorporated, in not having a nut on the end of same. Indeed, the plaintiff’s claim is here established to a legal certainty and we emphasize the word “legal”. We do acknowledge that speculation, conjecture and near [sic] possibility is not enough but, in reflection, the many strongly supported facts proven by the plaintiff removes the ultimate fact of causation from those categories. Secondly, the Court believes it was in error in assuming that the decedent did something to cause his fall and, in falling, to dislodge in some manner the sag bar. We think the contrary presumption is legally correct, i. e., that the decedent was exercising reasonable care and did nothing to bring about his own injuries and death.” (Oral Reasons for Judg *779 ment rendered June 30, 1969, Record, pp. 67, 68)
Appellants first complain that the trial court erred in finding that the sag bar in question was improperly installed and in holding that the evidence relative to the spot painting was inconclusive proof that Sun initially installed the sag bar with a nut on the end. Without engaging in a lengthy recapitulation of the evidence comprising the record before us, suffice it to say that we are satisfied after reviewing the testimony and the photographs introduced in evidence that the trial court’s finding of fact that Sun failed to install the sag bar with a nut on the obscured end is amply supported by the record and is the most reasonable and probable conclusion to draw therefrom. Appellants rely heavily on the evidence adduced with regard to spot painting which was performed after the installation and which appellants contend conclusively shows that the nut was on the rod at the time of the spot painting since otherwise the spot painting would have covered the threads of the rod. The trial court concluded that this evidence relative to spot painting was “very inconclusive,” which finding we feel is likewise amply supported by the record. It is reasonable to conclude that the absence of spot paint in the area mentioned by appellants could be attributable to numerous causes, including incomplete spot painting of the rod itself and inaccessibility of the grooved area due to its protrusion into the steel channel into which the rod was inserted. Appellants’ further contention that the nut was originally properly installed but was removed by another craft or other workers is pure speculation and totally unsupported by the record. The evidence shows that Sun was exclusively responsible for the installation and erection of all structural steel in this particular building including proper installation of the sag bar. The trial court expressly found that the sag bar had not been properly installed in that a nut had not been properly screwed onto both ends of the bai and further expressly found that the nut had not been removed after installation. These findings of fact are entitled to great weight and we see no reason for disturbing same. In this connection we note in particular the testimony of Mr. Newlin, who testified in his deposition introduced in evidence that he could not determine whether the area of the sag rod which was free of paint was free of paint only in the area where the nut would have been, although he said the width of the unpainted metal was about the same as the width of the nut. (Deposition of Robert Garrett Newlin, p. 18)
Appellants also complain and assign as error the findings of fact of the trial court that the sag bar was over the head of the deceased and that any contact he had therewith would have to have been with his hand. Appellants contend that these findings are necessarily based on speculation and conjecture and are unsupported by the record. We disagree. The testimony of the other electrical workers at the accident scene, particularly that of Mr. Tirpitz, as well as an examination of the photographs introduced in evidence clearly indicate the reasonable probability that the deceased was, immediately prior to his fall, working in an area of the building whereby the sag bar would have been over his head, and in view of the fact that the sag bar was not out of place immediately prior to the accident, it is only reasonable to assume that the deceased did in fact reach for it for support causing it to give way and become dislodged due to the missing nut.
Appellants further complain that the trial court erred in finding and holding that the sag bar was causally related to the fall of the deceased, which finding and holding appellants contend necessitated use of speculation and conjecture by the trial court, and in applying a presumption that the decedent was exercising reasonable care at the time of the accident. These contentions are likewise without merit. It is clear that under the law a presumption exists that the deceased exercised due care under the circumstances, in conformity with *780 the instinct of self-preservation and the love of life, Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So. 2d 445 (1955); Aymond v. Western Union Telegraph Company, 151 La. 184, 91 So. 671 (1922); Begnaud v. Texas and New Orleans Railroad Company, 136 So.2d 123 (La.App. 3rd Cir. 1961), certiorari denied; Kern v. Knight, 13 La.App. 194, 127 So. 133 (1st Cir. 1930), which presumption is properly applicable to a case of this sort, cf. Stansbury v. Mayor and Councilmen of Morgan City cited supra. Appellants contend that plaintiff has failed to prove a causal connection between the sag bar and proffer that the fall might just as well have been attributable to the deceased’s own negligence in slipping, tripping or otherwise failing to exercise due care, or to an act of God such as the deceased’s having become sick or dizzy. In the first place, such contentions of necessity contravene the aforementioned presumption of due care which is accorded to the deceased until proof indicates the contrary, which proof is totally lacking in this case. Secondly, if the deceased merely fell from where he was working, such fall would not account for the sag bar being dislodged and resting at an angle in a position different from that which it occupied immediately prior to the accident. Of particular significance is the testimony of the other electrical workers that the sag bar could not have been resting on the conduit as indicated in the photographs (Plaintiff Exhibit No. 2; Plaintiff Exhibit No. 4; Joint Exhibit No. 17), since it would have been directly in the line of work and directly in the horizontal path of the conduit installed by the electricians only a few minutes before the accident. The most reasonable conclusion to be drawn from the evidence is that the deceased did in fact attempt to use the sag bar for support and when it became dislodged and gave way he fell. The plaintiff was required to prove her case only by a preponderance of the evidence, which burden of proof the trial court concluded plaintiff carried. We find no error in the trial court’s conclusions that Sun was negligent in installing the sag bar improperly and that this improperly installed sag bar was the proximate cause of the accident.
Appellants assign as their last specification of error the contention that the award of damages is so excessive as to amount to a clear abuse of judicial discretion. As previously indicated the trial court awarded plaintiff the sum of $104,-040.75, $4,040.75 representing special damages. With regard to these special damages appellants take issue only with the award made for the tombstone, contending such is not a recoverable item of damages on the basis of Bynum v. Succession of Hodge, 15 La.App. 222, 131 So. 473 (2d Cir. 1930). Other appellate courts have in later decisions permitted recovery in a wrongful death action for the cost of a tombstone as an item of special damages, see generally, Keller v. Louque, 159 So.2d 347 (La.App. 4th Cir. 1964); Dauzat v. Great American Indemnity Company, 130 So.2d 805 (La.App. 3rd Cir. 1961). We feel the result reached in these later cases is the preferable one in that the cost of a tombstone is properly recoverable as an item of special damage reasonably incurred as a result of a defendant’s wrongdoing for which he is obliged to make compensation, Louisiana Civil Code Article 2315. To say that a tombstone is an embellishment the cost of which should be borne by the survivors rather than the tort-feasor would likewise lend support to a notion that the survivor should be awarded only the amount necessary to purchase a modest wooden casket rather than a more expensive metallic one. Similarly, with regard to medical expenses, such reasoning would logically require that an injured person be allowed to recover only a modest hospital room allowance such as would be available in a ward or semi-private room rather than the cost of a private room if all such facilities were equally available. We feel the cost of a tombstone is an item of damage properly recoverable in a wrongful death action as a reasonable consequence of the defendant’s negligence.
*781 The award of $100,000 general damages comprises the damages recoverable in the survival action representing physical pain and suffering and mental anguish endured by the decedent prior to his death and the damages recoverable in the wrongful death action by the plaintiff individually for loss of her husband’s earnings, past and future, as well as the loss of her husband’s love, affection and companionship and the grief, mental anguish and distress suffered by the plaintiff. Appellants complain that the trial court failed to give consideration to the probability of the plaintiff’s remarriage as alluded to in Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891 (1960). Suffice it to say that the suggestion that such a consideration is proper in assessing damages in a wrongful death action was expressly repudiated by the Louisiana Supreme Court one year later in McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183 (1961), wherein the Supreme Court expressly stated that the loss suffered by a surviving spouse is determinable by conditions existing as of the date of the wrongful death and the tort-feasor will not be permitted to use the probability of or even the actual remarriage of the surviving spouse in mitigation of damages.
Counsel for appellants has cited several cases wherein substantially smaller awards were made to a surviving widow; counsel for appellee in response has cited several cases wherein larger awards of general damages were made to a surviving widow. It is clear that an award of damages made by the trial court will not be disturbed unless it amounts to a clear abuse of the great discretion vested therein, Louisiana Civil Code Article 1934(3); Lom-enick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967) ; Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). We are satisfied from a review of the record that the aforementioned award of general damages made by the trial court does not constitute a clear abuse of judicial discretion and that the award made in the survival action and wrongful death action is not manifestly excessive, cf. Webb v. Zurich Insurance Company, 251 La. 558, 205 So.2d 398 (1967) — award of $164,412.11 to surviving widow; Owen v. Zurich Insurance Company, 251 La. 590, 205 So.2d 410 (1967) — award of $156,198 to surviving widow; Allien v. Louisiana Power & Light Company, 202 So.2d 704 (La.App. 3rd Cir. 1967 — award of $85,000 to surviving widow for apparent instantaneous death of her husband; Tison v. Fidelity and Casualty Company of New York, 181 So.2d 835 (La. App. 2d Cir. 1965)—award of $101,664 to surviving widow.
For the foregoing reasons, the judgment appealed is affirmed, all costs assessed to appellants.
Judgment affirmed.