170 So.2d 173 (1964)
Mr. and Mrs. Roland A. HESSE, Jr.
v.
MARQUETTE CASUALTY COMPANY.
No. 1536.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1964.
Rehearing Denied January 11, 1965.
Writ Refused February 26, 1965.
*174 Schoemann, Gomes, Ducote & Collins, Rudolph R. Schoemann, New Orleans, for defendant-appellant.
Frank J. D'Amico and Anthony J. Vesich, Jr., New Orleans, for plaintiffs-appellees.
Before CHASEZ, HALL, and BARNETTE, JJ.
CHASEZ, Judge.
Mr. and Mrs. Roland A. Hesse, Jr., instituted suit to recover damages sustained when Mrs. Hesse slipped and fell as she was entering Ched's Cocktail Lounge in New Orleans, Louisiana. The defendant, Marquette Casualty Company, is the liability insurer of Chuck's Inc., doing business as Ched's Cocktail Lounge. The plaintiffs requested a trial by jury which was held but which ended in a mistrial. The case was thereafter tried before the judge alone by stipulation of both counsel. Judgment was entered for plaintiffs, awarding Mrs. Hesse $14,000.00 for her injury and $2,724.00 to Mr. Hesse for medical expenses and maid service. From these judgments the defendant, Marquette Casualty Company appeals.
Defendant complains that he was denied a jury trial; that the judgment was contrary to the law and the evidence, and that Mrs. Hesse was contributorily negligent. They also appeal the quantum awarded to plaintiffs. Plaintiffs did not appeal or answer the appeal taken.
*175 We find no merit in the contention that defendant was denied a jury trial. Counsel who represented the defendant below acquiesced in trying the case before the court alone, as is shown by the following quotation from the record:
"BY MR. MORRISON:
"Q. Mr. Messersmith, at the close of the previous trial of this matter and incidentally, probably before both Mr. D'Amico and I forget it, we should stipulate or somebody move to file in evidence the previous record in the case.
"BY MR. D'AMICO: I believe that was agreed upon at the pre-trial conference. We would have it prepared and introduce it in evidence as it was taken down at the first trial.
"BY THE COURT: That takes care of it, but it has to be in the record as it is now. It is not now in the record."
The facts are uncontroverted. Mr. and Mrs. Hesse and a companion couple were in the French Quarter on the evening of March 19, 1961. They decided to go to Ched's Cocktail Lounge in the Claiborne Towers in this city and arrived there between 8:30 and 9:00 o'clock p. m. The evidence established that it had rained during the day and at the time of the accident it was still drizzling or raining lightly. The group parked their car about a block from Ched's and proceeded to walk in the rain to the entrance. Upon arriving at the entrance, Mr. Hesse opened the door and Mrs. Hesse proceeded to enter the foyer where she slipped and fell sustaining a serious fracture of the right forearm. Because of the seriousness of the injury, and without notifying Ched's Lounge, they immediately proceeded to Mercy Hospital where it was ascertained that Mrs. Hesse suffered a compound fracture of both bones of the right forearm. Three days later Mr. Hesse notified Ched's of the occurrence of the accident.
The testimony established that the floor of the foyer was wet. The foyer is approximately four feet eight inches in width with doors on either end, one leading into the bar portion of Ched's and the other to the Lounge. The flooring was of pure vinyl tile. Experts testified that pure vinyl tile could not be manufactured with a non-slip aggregate. The floor was mopped and cleaned daily and waxed approximately three times a week. The wax which was used contained a non-slip ingredient.
The plaintiff offered the testimony of George J. Riehl, a competent architect. He testified that the floor was 100% vinyl; that there was an abnormal condition relative to the front doors that allowed rain to enter through the crack between and under the doors; that there was no marquee or canopy over the entrance to keep the rain from going in the building when the doors were open; that the lighting in the foyer was very dim; and that the construction of the entrance to the foyer violated various requirements of the New Orleans Building Code. He also testified that it would have been inexpensive to furnish a rubber mat, or like material, to guard against patrons slipping or falling in the foyer.
The defendant offered the testimony of Sidney C. Brown, who is a floor covering distributor. He testified that the vinyl tile was a standard flooring material; that there was no non-slip aggregate in the vinyl tile used on the floor; and that the slipperiness of the floor would be increased when it was wet. The testimony of Mr. H. E. Riley, who is the proprietor of the company that manufactures the wax used in the Lounge, was also offered. He testified that the wax has an improved anti-slip floor ingredient. He further testified that once a month would be adequate waxing for the foyer considering the amount of traffic. He stated that the increased waxing of the floor in Ched's was desirable only for appearance sake. Plaintiff's counsel questioned this expert, asking him if his wax would prevent the floor from being slippery if it *176 was too frequently used and the response was negative.
Cecil H. Shilstone, owner of Shilstone Testing Laboratory testified for the defendant. Mr. Shilstone tested the floor relative to its anti-slipperiness pursuant to the standards established by the National Bureau of Standards. This test was performed with a machine using a leather and rubber heel. His testimony indicates that the floor was in fair condition even when wet. The plaintiff in this case was wearing shoes with high heels, fashioned with a steel tip.
Bernard Aaronson, an architect, and Cliebert Bergeron, an interior decorator, testified that vinyl tile was standard material for a foyer.
Casimere Joseph and Andrew Jackson, porters at Ched's, and John C. Bond, Sr., manager of the Lounge, all testified that during a hard rain water would accumulate in the foyer. The testimony also revealed that a porter was not on duty in the afternoon on Sundays as on other days of the week.
Many slip and fall cases can be found in the jurisprudence of this state. Each case must stand alone and is peculiar to its own facts. There is no fixed rule on facts, and the facts of each case must be treated independently and the rules of law applied to them. There are myriads of factual situations involved in cases of this kind, and application of the principles of law to each case must be applied by the Court in conformity with the true civil law concept. See Benton v. Connecticut Fire Insurance Company, 145 So.2d 89 (La.App. 1962).
While it is well settled that a store owner is not the insurer of the safety of his customers, he does have a responsibility to the public to provide a safe place for them; this duty requires him to exercise that degree of care that would be exercised by an ordinary prudent man under the same circumstances. Peters v. Great Atlantic & Pacific Tea Co., 72 So.2d 562 (La. App.1954). He must maintain his premises in a reasonably safe condition. If he maintains any furnishings or equipment therein which probably, foreseeably, or reasonably, will cause damage to others he should provide adequate safeguards to avert an accident. Simmons v. Chuck's, Inc., 113 So.2d 309 (La.App.1959).
It is quite apparent that the tests and conditions set forth in the above citations were not met by the defendant's insured in the operation of his premises on the evening of the accident, and we are in complete agreement with the trial court when it indicated that it was convinced of the negligence of the defendant's insured in this matter and that plaintiff was not guilty of contributory negligence.
In its reasons for judgment the trial court states:
"The Court was impressed with the testimony of Mr. and Mrs. Roland A. Hesse, Jr. The Court finds as a fact that the accident happened at the place and in the manner detailed in their testimony.
"The carpet on the floor of the foyer had been removed and a pure vinyl flooring placed in the foyer. The lights in the foyer were very poor and rainwater had been allowed to accumulate on the vinyl floor. Mr. George J. Riehl, an architect, testified that there was an abnormal condition at the entrance of Ched's Cocktail Lounge.
"The Court is of the opinion that defendant's insured was negligent in maintaining a hazardous condition of the entrance way of the Cocktail Lounge."
In holding that the plaintiff, Mrs. Roland A. Hesse, Jr., was not guilty of contributory negligence, the Court stated:
* * * * * *
"It is the opinion of the Court that the plaintiff was walking normally and using ordinary care when her feet just *177 slipped out from under her, causing her to fall. Under the circustances the plaintiff was not guilty of contributory negligence."
It is well settled that an appellate court will not disturb the findings of the trial court on questions of fact unless they are manifestly erroneous. The trial judge has the advantage of hearing the testimony of all witnesses presented, both lay and expert, observes their appearance and demeanor and examines them when he sees fit. Thus the trial judge has a particular advantage in weighing the credibility of the witnesses. As this case involves questions of fact and credibility of witnesses, we are not prone to say that the findings of the trial judge were manifestly erroneous and, therefore, we will not disturb the judgment rendered herein.
On the question of damages awarded to Roland A. Hesse, Jr., both the appellee and appellant agree that the trial judge erred in computing the hospital bill at $1,355.00 when it should have been $971.55. Accordingly, this Court will reduce the judgment rendered in favor of Roland A. Hesse, Jr., from $2,724.00 to $2,340.55.
The record indicates that the injury suffered by Mrs. Roland A. Hesse, Jr., was severe and very painful and extended over a considerable period of time. The amount of time spent by her in hospitals aggregated thirty days, embracing three separate admittances for operative procedures. She was admitted on March 19, 1961, when the accident occurred and remained until April 1, 1961; during this period a rush pin was inserted in her arm and a cast applied. On September 24, 1961, she was admitted to the hospital at which time a bone graft was performed; this stay amounted to thirteen days. On May 31, 1962, she was again admitted to the hospital for the purpose of removing the rush pin. This stay amounted to three days. For approximately sixteen months she was unable to use her arm during which period she suffered a great deal of pain. Her arm had to remain in a cast for at least four months. The result of these operative procedures has likewise left her with severe scars on her arm and hip. Mrs. Hesse describes her injuries as follows:
"A. Well, there isI think it's nerve damage and there is numbness in the hand. If I press on the sensitive area I get pins and needles down into the fingers. The skin is almost like your hand would be. It doesn't feel like the other hand does in damp weather. It aches. If I do anything heavy with it, the bone will ache. I can't do any work or sustained motion with the arm, chopping seasonings. I have to stop, the muscles are tight up in there. I can't do anything with sustained motion for any period of time. I just anything heavy, I can't do it. I do it lefthanded.
"Q. Does the scar cause any embarrassment?
"A. I'm self-conscious about it. I'm sure almost any woman would be."
The scar referred to is a scar eight inches or more in length on the lady's right forearm. Under the circumstances, we believe that the award of $14,000.00 granted to Mrs. Roland A. Hesse, Jr., is fair and reasonable and under no circumstances may be viewed as an abuse of discretion by the trial court. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, (1963); Ballard v. National Indemnity Company of Omaha, Nebraska, Sup.Ct. of Louisiana, 169 So.2d 64, rendered November 13, 1964.
The judgment of the Court a qua is therefore amended by reducing the principal amount payable to Roland A. Hesse, Jr., from $2,724.00 to $2,340.55, and as amended the judgment is in all other respects affirmed. All costs of this Court shall be borne by the defendant, Marquette Casualty Company.
Amended and affirmed.