HALL, Judge.
Mrs. Mary Pervel filed suit on January 7, 1965 against Hospital Service Association of New Orleans (commonly known as “Blue Cross”) and its liability insurer for damages for personal injuries sustained by her on January 8, 1964 when she slipped and fell in the entranceway of the Blue Cross building in the 1500 block of St. Charles Avenue in the City of New Orleans. Plaintiff contended that she slipped and fell because of a wet or damp step immediately inside the front door. Following trial on the merits judgment was rendered in defendant’s favor dismissing plaintiff’s suit at her cost and plaintiff appealed.
The Trial Judge in his written “Reasons for Judgment” found that plaintiff was guilty of negligence in failing to take due care for her own safety. He further held that plaintiff failed to prove any negligence on the part of Blue Cross in the maintenance of its premises.
The only witnesses who testified in the case were the plaintiff, her doctor, and her daughter-in-law (also named Mary Pervel). All testified on behalf of plaintiff, and their testimony is unrefuted. Defendants called no witnesses.
Plaintiff testified that she lives on South Carrollton Avenue and that she is 60 years old; that on January 8, 1964 she went to the Blue Cross building on St. Charles Avenue to pay the premiums on her insur- *853 anee, as she had been in the habit of doing ■every three months for the past ten years. .'She was driven from her home to the Blue ■Cross building by the sister of her daughter-in-law, and was also accompanied by her ■daughter-in-law. The car was parked “a. little distance” from the building, and she ■got out alone and went into the building. Plaintiff described the entrance to the building, stating that immediately inside the ■door there is a narrow platform at street level followed by two or three steps leading down to the office floor. “Well, you come into the office, you walk a little bit and in■side there was the steps.” She described the steps as being of white marble. Plaintiff further testified that upon entering the 'building she slipped and fell on the steps injuring her left leg. She made no claim ■that anyone witnessed the accident but said -that “a gentleman came there, picked me up .and put me on the sofa.” Insofar as plain-biff recalled, the man did not talk about the ■condition of the steps, but he went out and summoned her daughter-in-law who took 'her to the hospital. On direct examination by her attorney plaintiff was asked:
“Q. Now, when you walked into the building, prior to going down the steps, did you notice anything on the steps?
“A. Yes. I noticed it was wet but I ■couldn't exactly tell whether it was water. 'It was so white. You just go on it. 'That’s all I did.”
On cross-examination plaintiff admitted that it was a rainy day, that it had been drizzling constantly, that the sidewalk was "“misty wet”, that her shoes “could have been a little damp.” She stated: “I know why I fell because the steps must have been wet with water or whatever it was, and I slipped.” She made no claim that the steps were broken or cracked or anything of that sort. Plaintiff also admitted that she knew there was a sign on the entrance door reading: “Caution, step down inside.”
Dr. Tedesco’s testimony was confined to . a description of plaintiff’s injuries and the .treatment given.
Plaintiff’s daughter-in-law testified that while she and her sister were parked outside waiting for plaintiff, “a gentleman” came out and told them plaintiff had been hurt; that she followed the man into the building; that when he showed her where plaintiff fell she said to him: “That’s dangerous. There’s water on the steps. It’s slippery” and that he agreed with her. She didn’t ask the man’s name but said that he told her he was “the office manager or the general manager for the insurance company. I don’t remember exactly his words.” The daughter-in-law testified that plaintiff’s clothing was wet and that plaintiff wanted to go home and change clothes before going to see the doctor for fear of catching cold; that plaintiff was first taken home and then to the hospital. She further testified that it had rained hard on the day of the accident, and there was a fine misty rain falling when they left home and when they arrived at the Blue Cross building.
The Trial Judge evidently accorded no weight to the daughter-in-law’s attempt to show negligence on the part of the defendant through an alleged statement made by an unidentified man, and neither do we. It is significant that the plaintiff herself attributed no statement to him.
We conclude from our study of the record that the steps were either wet or damp, and that plaintiff’s shoes and clothing were likewise either wet or damp, and that the accident was probably due to a combination of the two. It is fair to assume that the condition of the steps was due to water tracked in by people entering the building on the rainy day in question. The record contains no evidence of any puddle or great quantity of water on the steps, but whatever condition the steps were in was observed by plaintiff before she undertook to negotiate them.
We agree with the holding of the Trial Judge that plaintiff failed to prove any negligence on the part of Blue Cross in the maintenance of its premises.
*854 We are in agreement with the holding in St. Julien v. Fireman’s Fund Insurance Company, 127 So.2d 245 (La.App. Third Circuit 1961), wherein the Court said:
“ * * * the circumstance that the entranceway to commercial buildings may be more slippery in wet weather than in dry is not of itself sufficient to constitute actionable negligence on the part of the property owner, when such a condition is observable by a reasonably prudent person of ordinary intelligence and when then the entranceway can be traversed in safety by the exercise of ordinary care * * *”
See also Lawson v. D. H. Holmes Co., Limited, 200 So. 163 (La.App. Orleans 1941).
This Court in Hesse v. Marquette Casualty Company, 170 So.2d 173 (La.App.1964), affirmed a judgment awarding damages for personal injuries to a plaintiff who slipped and fell in the foyer of a cocktail lounge. We found in that case that the cocktail lounge was negligent through allowing rain water to accumulate on the vinal floor surfacing of the foyer. In that case however the evidence showed that “ * * * there was an abnormal condition relative to the front doors that allowed rain to enter through the crack between and under the doors * * * and that the construction of the entrance to the foyer violated various requirements of the New Orleans Building Code * * The proof also showed that the proprietor was aware that “ * * * during a hard rain water would accumulate in the foyer.”
The facts in the instant case are entirely different from those in Hesse, and, as we said in that case:
“Many slip and fall cases can be found in the jurisprudence of this state. Each case must stand alone and is peculiar to its own facts. There is no fixed rule on facts, and the facts of each case must be treated independently and the rules of law applied to them * *
It is too well settled to require citation of authority, that the proprietor of a. store or other business establishment is not. an insurer of the safety of his invitees, and that he cannot be held liable for damages to a person injured on the premises absent proof of active negligence on his part or proof of a failure on his part to maintain the premises in a reasonably safe condition; for persons exercising ordinary care.
For the foregoing reasons the judgment appealed from is affirmed, costs of this-appeal to be borne by plaintiff-appellant..
Affirmed.