127 So.2d 183

Patsy Lee Kelly McFARLAND et al.

v.

ILLINOIS CENTRAL RAILROAD COMPANY.

No. 45428.

Feb. 15, 1961.

16

Carroll Buck, Amite, Breazeale, Sachse & Wilson, Baton Rouge, for defendant-appellant.

Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, Reid & Macy, Hammond, for plaintiff-appellee.

HAMITER, Justice.

Paul E. McFarland was fatally injured during the morning of August 15, 1958 at a railroad crossing located within the City of Denham Springs. His wife, Mrs. Patsy Lee Kelly McFarland, and their two minor children (then aged one and two, respectively) survived him. Subsequently, the widow, individually and on behalf of the mentioned minors, instituted this suit to recover damages occasioned by her husband's accidental death which allegedly resulted from the negligent operation of a train by employees of defendant, the Illinois Central Railroad Company.

At the instance of plaintiff the suit was tried before a jury of twelve persons who, on November 6, 1959, returned a "Verdict for Mrs. McFarland for the sum of $15,000 and verdict for the plaintiff in behalf of the children in the sum of $20,000 each." And on December 7, 1959 the verdict of the jury was made the judgment of the district court.

On defendant's appeal (it was answered by plaintiff who prayed for increases in the awards) the Court of Appeal amended the judgment by reducing the amounts granted for the benefit of the two children from $20,000 each to $14,700 and $14,900, respectively, and by increasing the award to plaintiff individually from $15,000 to $46,422.70. Otherwise the judgment was affirmed. See 122 So.2d 845.

Following the refusal of a rehearing by the Court of Appeal the defendant applied to this court for a writ of certiorari. We granted the writ, specifically limiting our consideration of the cause to the amount awarded the widow. In all other respects defendant's application was denied.

Plaintiff did not apply for a writ of certiorari. Consequently, the only issue presently before us (furnished by the writ granted to the defendant) is whether the award made to her individually by the Court of Appeal was excessive. Washington v. Holmes and Barnes, Limited et al., 200 La. 787, 9 So.2d 35; Osborne v. Moss-

ler Acceptance Company et al., 214 La. 503, 38 So.2d 151; Cassar et ux. v. Mansfield Lumber Company, Inc. et al., 215 La. 533, 41 So.2d 209, and Blades v. Southern Farm Bureau Casualty Insurance Company, 237 La. 1, 110 So.2d 116.

As before shown the jury and district court award to plaintiff for herself of $15,-000 did not itemize the particular losses for which it was granted; it was for a lump sum. However, the Court of Appeal, in increasing such award, concluded that she was entitled to a certain amount for each of several specified losses. Thus, it allowed $35,000 for loss of support, $7,500 for loss of love, companionship and affection, $1,500 for the pain and suffering endured by decedent in the interval between his injury and death, and $2,422.70 for medical and funeral expenses incurred. Accordingly, it rendered judgment in favor of plaintiff individually for a total of such sums, or $46,-422.70.

Complaining that such increase was greatly excessive, particularly with respect to the allowances for loss of support and for loss of love, companionship and affection, defense counsel direct our attention to a joint written motion filed in the Court of Appeal (while the cause was pending there) for the purpose of showing a change in the married name of plaintiff from McFarland to McCutcheon, the allegations of the motion (as well as an attached copy of a marriage certificate) disclosing that on December 18, 1959, or eleven days after the rendition and signing of the district court judgment, she was married to one Franklin Delano McCutcheon. And such counsel insist that by reason of her remarriage plaintiff is entitled to no damages for the mentioned particular losses, they citing and relying on certain language used in Brown v. S. A. Bourg and Sons, Inc. et al., 239 La. 473, 118 So.2d 891, which we shall discuss hereinafter.

Counsel for plaintiff, on the other hand, contend that her remarriage had no effect whatever with respect to the amount of damages to which she is herein entitled. Alternatively, they argue that if the remarriage could possibly affect her damage claim this court cannot now consider it for the reason that the record before us contains no adduced evidence in proof thereof and, hence, the case must be remanded.

In the course of its opinion in the instant cause the Court of Appeal noted the disclosure, by the above mentioned joint motion, of plaintiff's remarriage. Then, citing Stephens v. Natchitoches Parish School Board, La.App., 110 So.2d 156 and Hightower v. Dr. Pepper Bottling Company of Shreveport, Inc. et al., La.App., 117 So.2d 642, it went on to conclude: " * * * Her marriage, however, can have no effect upon her right of recovery herein and is not to be considered in mitigation or reduction of the damages otherwise due. * * * " [122 So.2d 861]. In this conclusion we find no

error. It is clearly supported by the cited Louisiana Court of Appeal decisions; and almost all of the courts of other jurisdictions in cases wherein a like question was presented have accepted and applied the same doctrine. In this connection an annotation in 30 A.L.R. 121, which lists numerous early cases relating to the subject, states: "By the great weight of authority, in actions to recover damages for the wrongful death of a married person, evidence is inadmissible that the surviving spouse has remarried since the death complained of, and this fact is not to be considered in mitigation of the damages recoverable in behalf of such surviving spouse." See also Murphy v. Barlow Realty Company et al., 214 Minn. 64, 7 N.W.2d 684; Gallo et al. v. Southern Pacific Company et. al., 43 Cal.App.2d 339, 110 P.2d 1062; The City of Rome, D.C.N.Y., 48 F.2d 333; Johns v. Baltimore and Ohio Railroad Company, D.C., 143 F.Supp. 15, affirmed 3 Cir., 239 F.2d 385; United States v. The S. S. Washington, D.C., 172 F.Supp. 905; 5 Southerland on Damages (Fourth Edition), Section 1265, 2 Sedgewick on Damages (Ninth Edition), Section 583, 25 C.J.S. verbo Death § 114; 16 American Jurisprudence verbo Death, Section 234.

The reason for such doctrine appears to be that the loss suffered by the surviving spouse is determinable by conditions existing as of the date of the wrongful death such being the time when a right and a cause of action for the damages arises; and that the wrongdoer will not be permitted to show and rely on, and hence to benefit from, a remarriage in seeking a reduction of the damages for which he was responsible. Thus in St. Louis, Iron Mountain and Southern Railway Company v. Cleere, 76 Ark. 377, 88 S.W. 995, 998, it was said: "Appellant also complained on account of the giving of an instruction asked by the plaintiff to the effect that the jury should not consider the remarriage of the widow as affecting the assessment of damages. This was a correct instruction, as it was not proper for the jury to consider the remarriage of the widow to reduce the amount of the damage. * * * 'The reason is that a right of action arises at the time of the death to recover just what was lost by it, and that the loss thus occasioned is none the less, even though the injured party thereafter acquire, through his own skill or industry, or the charity or affection of another, more than he lost.' * * *"
And in Gulf, Colorado and Santa Fe Railway Company v. Younger, 90 Tex. 387, 38 S.W. 1121, 1122, the court stated: "To the first question we answer that evidence of the marriage of plaintiff, Younger, after the death of his wife, on account of which he sought to recover damages, was properly rejected by the court. (Here several decisions are cited) If the plaintiff's wife was killed through the negligence of the de-

fendant, he then lost the value of her life as a wife; and the fact that her place had been supplied by a subsequent marriage does not in any manner operate to mitigate the damages for which the wrongdoer was responsible. * * *" (Parenthesis ours)

Of course, in many common law states punitive damages are allowed, whereas our laws do not provide for awards of that type. However, the opinions in the cases decided by courts of other jurisdictions dealing with the instant problem clearly indicate that therein consideration was given purely to actual losses with the view of awarding only compensatory damages.

An opinion of this court in Jones v. Kansas City Southern Railway Company, 137 La. 178, 68 So. 401, 405, rendered on the refusal of a rehearing, seems to give recognition and approval to the above discussed and generally accepted doctrine, notwithstanding that therein no actual remarriage was involved. In such opinion the court observed: "Our reconsideration of the matter has led to the conclusion that evidence as to the engagement of the plaintiff to be again married was irrelevant, for non constat that the engagement would result in marriage (and plaintiff's counsel, in their reply brief, say that it has not yet done so) ; and, if it should so result, non constat that the condition of the plaintiff will thereby be bettered."

Other than Brown v. S. A. Bourg and Sons, Inc. et al., supra, no decision has been cited by defense counsel in support of their position that evidence of remarriage is admissible and should be considered in mitigation or reduction of damages. True, in the Brown case we did state that one of the numerous factors to be taken into consideration in awarding damages to a surviving wife for the wrongful death of her husband is " * * * the percentage of remarriages of widows, particularly to second husbands whose earnings are greater that those of the first * * *." [239 La. 473, 118 So.2d 895]. But obviously that language contravenes the above announced generally recognized doctrine which we herein accept and adopt. Parenthetically, it is appropriate to notice that in such case neither a remarriage nor an engagement to marry was involved. Hence, we now conclude that our above quoted statement in the Brown controversy relative to remarriages was inadvertently made and incorrect. And, in view of this conclusion and of the aforementioned accepted doctrine, it becomes unnecessary to decide whether or not there is any evidence before us of the remarriage of the plaintiff herein.

Nevertheless, we are unable to give approval to the increase in the award to plaintiff individually which was ordered by the Court of Appeal. That increase appears to have resulted primarily from the application of a mathematical formula de-

veloped in three decisions of intermediate appellate courts, namely Duree v. State of Louisiana et al., La.App., 96 So.2d 854; Stephens v. Natchitoches Parish School Board, supra, and Day v. National-U. S. Radiator Corporation et al., La.App., 117 So.2d 104. But this court on several occasions has expressed disapproval respecting the use of such a formula in awarding damages. Thus, in Dobyns v. Yazoo and Mississippi Valley Railroad Company, 119 La. 72, 43 So. 934, 937 we said that " * * * the question of the amount that should be allowed is *impossible of determination upon any scientific basis.* The most that the courts can do in such case is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either. * * *" (Italics ours).

Later, we observed in Jones v. Kansas City Southern Railway Company, 143 La. 307, 78 So. 568, 570 (on the original hearing) that " * * * plaintiff is entitled to recover compensation. The amount of that compensation, due regard being had to the purposes of the law, *cannot be fixed with any mathematical certainty, and it is left more or less to the discretion of the courts.*

"We are most earnestly asked to establish some fixed rule by which it might be gauged, but that function being more properly legislative than judicial, we are unwilling to assume it, however desirable and ben-

eficial such a rule might be." (Italics ours.) (On a rehearing, and apparently for the first time, it was pointed out that the Jones action was controlled by the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., under the provisions of which the United States Supreme Court had set out a definite formula which we were required to accept.)

And in the more recent case of Brown v. S. A. Bourg and Sons, supra, we stated: "The monetary damages resulting from loss of support *cannot be calculated with mathematical exactitude*. They are speculative in nature and as in the case of damages for loss of love and companionship, mental anguish and other damages of that character, much discretion must be left to the judge or jury." (This language is in keeping with a provision contained in Revised Civil Code Article 1934 reciting that "In the assessment of damages * * * in cases of offenses * * * much discretion must be left to the judge or jury * * *.")

 While much discretion is vested in the trial judge or jury in awarding damages, as was pointed out in the aforementioned authorities, the award is always subject to review by an appellate court. Accordingly, in the instant case we have considered the verdict of the jury in the light of the transcript of evidence and have concluded that there was a slight abuse of the discretion vested in that body. Apparently

no allowance was made for the intense pain and suffering endured by the decedent throughout the hour which he lived following the accident (for part of which his widow is now entitled to recover damages—Revised Civil Code Article 2315) or (as the Court of Appeal noted) for his medical and funeral expenses amounting to $2,422.70. Considering these two elements, the widow's loss of companionship, love and affection and of probable support resulting from the death of her husband (at the time he was 25 years of age,' had a take home pay of $362.22 per month or $4,346.64 per year, and his working life expectancy was 36 years), and the numerous other relevant circumstances disclosed by the record before us, we think that an award of $20,000 to plaintiff individually would adequately compensate her. Particularly noticeable, incidentally, is a complete lack of evidence as to the approximate amount contributed weekly, monthly or annually by the decedent for the support of his wife.

For the reasons assigned the judgment of the Court of Appeal awarding to the plaintiff individually the sum of $46,422.70 is amended by reducing that award to $20,-000. And, as amended, such judgment is affirmed at the cost of the defendant.

FOURNET, C. J., and McCALEB and SUMMERS, JJ., concur in the decree.