187 So.2d 152 (1966)
Mrs. Billie Davis ROBNETT, Plaintiff-Appellee,
v.
GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, Defendant-Appellant.
No. 10547.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1966.
Rehearing Denied May 5, 1966.
Writ Refused June 22, 1966.
*153 Morgan, Baker, Skeels & Coleman, Shreveport, for appellant.
Wilkinson, Lewis, Woods & Carmody, Shreveport, for appellee.
Before GLADNEY, AYRES, and BOLIN, JJ.
AYRES, Judge.
In this action ex delicto, plaintiff seeks to recover of the defendant, the insurer of a Pick & Pack Store, damages allegedly sustained August 21, 1961, while she was shopping, when her foot became jammed, or wedged, under the corner of a platform, causing her to fall.
Plaintiff contends that defendant's insured was negligent in locating and maintaining the platform projecting into a main *154 aisle of the store and in failing to remove it notwithstanding the occurrence of previous identical accidents. The defendant denied that the platform constituted an obstruction of the passageway and, in the alternative, under the contention that the platform was visible to those making reasonable observation, pleaded that plaintiff was guilty of contributory negligence.
The question of liability was resolved against the defendant and plaintiff was awarded $15,000.00 for personal injuries and $3,971.78 for medical expenses. From a judgment accordingly rendered and signed, defendant appealed. Plaintiff has answered the appeal praying for an increase in the award.
The store herein involved, located on the Mansfield Road at its intersection with the Greenwood Road, in the City of Shreveport, had a main entrance from the Mansfield Road. From this entrance a main aisle traversed the store. Between display tables or counters forming lines perpendicular to the main passageway were lateral passageways. In line with one of these tiers of tables or counters was a platform constructed with a base made of two-by-fours, on top of which was a sheet of plywood projecting about four inches beyond the platform's base. This platform, stacked with throw rugs to the height of the merchandise on the adjacent displays, projected into the main aisle of the store. The rugs were disarrayed so as to at least partially conceal the platform.
First for consideration are the facts relating to the occurrence of the accident. Plaintiff, accompanied by a sister-in-law and two small children, a sister and a niece, entered the store from the Mansfield entrance and proceeded down the main aisle where she stopped in front of a counter to inquire as to the whereabouts of a particular item of merchandise for which she was shopping. On stopping, she recognized one of the two salesladies beyond the counter as an old friend, whereupon she returned to the main aisle to go around the counter and greet her friend. In turning a corner around the platform, her foot, as she stepped forward, struck underneath and was jammed, or wedged, between the corner of the platform and the floor, whereupon her body was jerked and thrown forward. Except for catching hold of a counter, plaintiff would have fallen to the floor. Nevertheless, it was necessary that she straighten up to remove her foot from underneath the platform. Her foot was bruised and gashed. She became sick and nauseated, and pain developed in her back. Because of the early manifestation of a serious injury to her back, plaintiff was admitted to a local hospital for examination and treatment within a delay of approximately three hours following the occurrence.
It is a rule generally recognized that a storekeeper must maintain his place of business in a reasonably safe condition for the use of his patrons, who are expected to direct their attention primarily to the merchandise on display and not so much to the floor to discover possible obstructions and hazards in the passageways. For instance, it was pointed out by this court in Lawson v. Continental Southern Lines, Inc., 176 So.2d 220, 222 (1965) that
"Although the law does not make a business owner an insurer of his customers' safety, it does impose the duty to provide a safe place for his customers to do business, necessarily implying a clear aisle or passageway through which patrons can walk and move about. The duty requires the exercise of reasonable care to make the premises safe for the invitee and to warn him as to dangerous conditions or hazards of which he is unaware. Liability does not arise unless and until it is established that the injury or loss was caused by the negligence of the owner or operator."
This rule was similarly stated by the Third Circuit in Provost v. Great Atlantic & *155 Pacific Tea Company, 154 So.2d 597, 600, 601-602 (1963), wherein the court made these observations:
"The law in this State is settled to the effect that a person who enters a store for the purpose of trade occupies the status of an invitee or business visitor, and that the owner or proprietor of such a store must exercise ordinary care and prudence to keep the aisles, passageways, floors and walks in a reasonably safe condition for his customers. Although the law imposes a duty of reasonable care toward the invitee, it does not make the storekeeper the insurer of the safety of persons properly on the premises, and his liability does not arise unless and until it is established that the injury or loss was caused by his negligence. The storekeeper will be held liable if he is aware of, or by the exercise of reasonable care should have discovered, the existence of an object projecting into the aisle which exposes patrons to danger and thereafter he fails to remove the danger or to warn the customer of it.
"Defendant's store in this case was a `self-service' type store, in which its merchandise was displayed on counters or on shelves so that customers could inspect the merchandise as they walked in the aisles or passageways of the store. The storekeeper certainly intended that his customers would devote the major part of their attention to the merchandise which was being displayed, rather than to the floor to discover possible obstructions in the aisle, and in our opinion that circumstance must be considered in determining the degree of care which the storekeeper should use in maintaining safe passageways. A patron of a self-service type store, we think, is entitled to rely upon the presumption that the proprietor will see that the passageways provided for his use are reasonably safe, considering the fact that while using these passageways be may be devoting some of his attention toward inspecting the merchandise."
See, also, Dever v. George Theriot's, Inc., 159 So.2d 602, 603, La.App., 3d Cir. 1964; Hesse v. Marquette Casualty Company, 170 So.2d 173, La.App., 4th Cir. 1964 (writ refused); Vogts v. Schwegmann, 56 So.2d 177, La.App., Orleans 1952.
In the instant case, the proprietor or manager of the store was clearly negligent in placing the platform in the aisle at the end of a display counter with its square protruding corners low to the floor.
In the Provost case, the court found a store owner negligent when Mrs. Provost sustained accidental injuries by tripping over boxes stacked in the aisle. It was held that she was not contributorily negligent in failing to see the boxes which were stacked in such manner as to prevent their view by patrons when shopping.
The Lawson case is similar in that the plaintiff fell over a footlocker which had been placed directly behind her while she was facing in another direction. However, the plaintiff was denied recovery because she failed to prove the proprietor negligent in that she failed to show the proprietor had actual or constructive knowledge of the placement of the footlocker. Another person, also a patron, had placed the footlocker on the floor behind Mrs. Lawson.
In the Vogts case, plaintiff entered the supermarket, made her shopping rounds, and, after leaving the checkout counter, turned left into an aisle provided for her exit. After clearing the end of the checkout counter, she tripped over a wooden carton on the floor at the end of the counter. The position of the obstruction was such that plaintiff could not have seen it from her former position at the checkout counter.
In the Dever case, plaintiff, while shopping in defendant's store, stepped upon a small piece of lettuce stem at the produce counter. This stem and several other very small pieces of produce had fallen to the *156 floor while defendant's clerk was loading the produce onto a cart adjacent to the counter. Permitting these produce particles to remain on the aisle floor was held negligent as they created an unreasonable hazard for use of the aisles by the customers. It was there also pointed out that a customer is not contributorily negligent in failing to observe inconspicuous particles or substances in the travel portion of an aisle in a mercantile establishment. In this regard it was said the customer is entitled to rely upon the presumption that the storekeeper has provided him a safe passageway and that a patron is under no duty to make specific observations of floor conditions before taking each step. This is especially true in view of the fact that the storekeeper must have intended that the customer devote a major portion of his attention to inspecting the merchandise deliberately displayed to attract his attention.
It would also appear, in the instant case, that the negligence of the storekeeper was compounded when he failed to remedy a dangerous situation which had existed, to his knowledge, for some days. This is likewise especially true in view of the fact that two of the store's employees had previously tripped over the same platform, one of whom, in a similar occurrence, sustained accidental injuries the day before the occurrence now under consideration. These prior accidents not only demonstrated the dangerous character of the platform but forcibly brought to the attention of the store manager and his employees notice of such fact, for on at least one of the two occasions the manager referred the injured employee to a doctor for medical attention.
In Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444, 445 (1943), the court made this observation:
"Almost all courts admit evidence of prior accidents for the purpose of charging the owners or managers of buildings and premises with notice of defects or physical conditions which are dangerous * * *."
This observation was noted in Carriere v. Aetna Casualty Company, 146 So.2d 451, La.App., 4th Cir. 1962.
The platform, as constructed and as located, as heretofore pointed out, was inherently dangerous, of which the store employees, including its manager, were aware, but who, notwithstanding, did nothing to remedy the situation until after plaintiff had been injured. Plaintiff was walking around the counter in a normal manner. There is nothing in the record to indicate that she was in any way contributorily negligent. The only way she could have protected herself from this danger would have been to focus her attention toward the floor, which she was not required to do. The conclusion is, therefore, inescapable that plaintiff sustained accidental injuries through the fault and negligence of the proprietor of the store in placing the aforesaid platform so as to protrude into the main aisle of the store.
Lastly for consideration is the matter of an award sufficient to compensate plaintiff for the injuries and disabilities sustained in the aforesaid accident. No serious contention is raised as to the medical expenses.
The accident occurred about 11:00 a. m. August 21, 1961. At that time plaintiff, three months pregnant, was 32 years of age. She was, on advice of her physician, Dr. Frank E. Kappen, admitted to a hospital at 2:15 p. m., whereupon, after superficial examination, the physician described her pain as "tremendous." Her pregnancy presented a problem with reference to a thorough examination and the administration of sedatives for relief of pain.
Dr. Harold R. Bicknell, an orthopedist, examined plaintiff a few days later and found tenderness and muscle spasm in the lumbar area of the back, and a "peculiar" sensation in the right leg, with pain on straight leg-raising test. His diagnosis at the time was lumbosacral sprain due to a fall. Plaintiff was released from the hospital *157 with instructions to remain on limited activity and to avoid strain. Dr. Bicknell noted some improvement in plaintiff's condition, but also noted a continuance of a number of symptoms as of the date of his examination September 13, 1961.
Plaintiff, on continuing to complain of marked pain in the lower back, was again admitted to the hospital October 9, 1961, for a 6-day period, and again on December 25, 1961, where she remained for a period of seven days undergoing treatment, after which she was permitted to return home under instructions with reference to a restriction of activities and the wearing of a maternity corset.
Due to her pregnancy, a thorough examination, as aforesaid, as well as the making of x-rays, was delayed until after the baby was born February 13, 1962. Thereafter, a more thorough examination was made including the taking of x-rays, from one of the results of which it was thought plaintiff's accident may have aggravated a previous back condition manifesting itself in 1959 and for which she underwent surgery in April, 1960. At that time an exploration of the discs at the L3-4 and L4-5 levels was carried out. The disc at the former level was found to be herniated and was removed.
Under date of June 9, 1962, plaintiff was again admitted to the hospital because the pain had "become extremely severe." She was placed in traction. A myelogram was performed which indicated some difficulty in the lumbar area. Dr. Bicknell again recommended surgery and accordingly a laminectomy was carried out June 18, 1962. A herniated disc was removed at the L4-5 interspace. After a period of 19 days' hospitalization, plaintiff was fitted with a back brace and discharged.
Because of continued pain in her back and legs, plaintiff was again hospitalized from November 30 to December 10, 1962, and readmitted December 13, 1962. At this time Drs. Heinz K. Faludi and Retia Edmonson, neurosurgeons, were called in for a neurosurgical evaluation. Plaintiff was thereafter released from the hospital but readmitted May 2, 1963, whereupon Drs. Faludi and Edmonson recommended another myelogram which was carried out on May 10, 1963. This disclosed a defect in plaintiff's back at the L3-4 level. Dr. Faludi recommended a reexploration of that area. Accordingly, another laminectomy was performed on May 17, 1963 at the L3-4 and L4-5 levels. The previous fusion was found to have broken down; extensive adhesions of scar tissue were also found. Unforeseen difficulties developed during this operation. For instance, in dissecting the dura from the bone, the dura was accidently cut and spinal fluid escaped. Thereafter, a spinal fluid fistula developed which required special attention and treatment. Plaintiff was, however, discharged from the hospital on June 3, 1963.
Plaintiff was seen by Dr. Faludi July 2, 1963. Pain had greatly subsided. There remained however, some tenderness and restriction of motion. He advised against exertion and that precautions be observed for at least six months; that any heavy type of activity be avoided. An opinion was expressed that plaintiff would be more susceptible to injury in the future than a person with a normal back, and that since the dura had become so precariously thin it constituted a certain potential danger; that, on an escape of spinal fluid again, additional surgery would be required.
Drs. Faludi and Bicknell were of the opinion that plaintiff had sustained a permanent disability to her back and from 20-25% disability of her body as a whole. She underwent two major operations, 98 days of hospitalization, and endured extreme pain and suffering. She will continue to suffer hereafter through arthritic changes aggravated by the injuries sustained.
Defendant submits, however, that in an assessment of damages a preexisting ailment or disease should be given consideration, *158 and cites Caldwell v. City of Shreveport, 150 La. 465, 90 So. 763 (1922); Levy v. Indemnity Ins. Co. of North America, 8 So.2d 774, La.App., 2d Cir.1942 (certiorari denied); Valence v. Louisiana Power & Light Co., 50 So.2d 847, 853, La.App., Orleans 1951.
In the Valence case the Supreme Court, in reducing the award in damages, stated:
"It appears that the district judge did not make allowance for the fact that plaintiff's infirmity was not all due to the accident. We have concluded, therefore, in the exercise of our discretion, to reduce the allowance for the personal injury * * *."
However, an equally applicable rule of law is that a tort-feasor must take his victim as he finds him. The wrongdoer is responsible for all the natural and reasonable consequences of his wrong, even though they are made much more serious or harmful by reason of a preexisting physical defect or weakness of the injured party. Rachel v. Bankers & Shippers Insurance Company, 146 So.2d 426, La.App., 3d Cir. 1962 (certiorari denied). Differently stated, it was said in Williams v. Reinhart, 155 So.2d 51, 52, La.App., 1st Cir. 1963, that
"The duty of care and of abstaining from injuring another is due to the weak, the sick, the infirm, equally with the healthy and the strong, and when that duty is violated the measure of damages is the injury inflicted, even though that injury might have been aggravated or might not have happened at all, but for the peculiar physical condition of the person injured."
While much discretion is vested in a trial judge or jury in the determination of an award for damages for personal injuries, such an award, however, is subject to review on appeal. McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246 (1961). Accordingly, in the instant case, we have considered the award in the light of the transcript of evidence and have concluded there was a slight abuse of this discretion. In giving consideration to the severity of the pain suffered and endured by plaintiff over a prolonged period of time and the probability of continuation of pain hereafter in, at least, a discomforting degree, as well as to the permanent residual disability sustained by plaintiff, the conclusion appears inescapable that the award for pain, suffering, and disability is insufficient and should be increased to the sum of $22,500.00.
Therefore, for the reasons assigned, the judgment appealed is amended so as to increase the principal of the award to $26,471.78, and, as thus amended, it is affirmed at defendant-appellant's cost.
Amended and affirmed.