SARTAIN, Judge.
In this action for personal injuries, the jury returned a verdict in favor of plaintiff aggregating $225,718.00. On a motion for a new trial, the trial judge as an alternative to granting the motion ordered a remittitur in the amount of $90,000.00. Plaintiff accepted the remittitur under protest and with reservations of his right to appeal or answer defendants’ appeal in the event of one.
Defendants filed a motion to disallow plaintiff’s conditional consent and to rescind the amended judgment. The trial court, assigning written reasons, denied the motion.
Defendants perfected a suspensive appeal urging that the remitted award is excessive. Plaintiff answered defendants’ appeal and also appealed devolutively urging in each instance the reinstatement of the jury award.
Defendants have again filed a motion to have plaintiff’s appeal dismissed on the grounds that the same was an equivocal acceptance of the judgment below and is therefore violative of C.C.P. Article 1813. Plaintiff has responded to the motion to have the appeal dismissed by citing Spizer v. Dixie Brewing Company, 210 So.2d 528 (4th La.App., 1968).
We agree with the ruling in Spizer and hold that the restrictive acceptance of the remittitur with full reservation to appeal or to answer any appeal that might be entered by the defendants is not such an acquiescence in a judgment that would preclude an appeal under C.C.P. Article 2085. Assuming arguendo, that plaintiff cannot accept a remittitur under protest and then appeal, plaintiff has answered defendants’ appeal and by virtue of such answer may seek any redress as though he had in fact appealed. C.C.P. Article 2133.
The issue as to liability was very seriously contested at the trial on the merits; *60 however, defendants (and rightly so) have not put liability at issue on appeal and the matter now before us is limited to quantum. The jury returned a verdict for the plaintiff in the amount of $225,718.00. The award as such by the jury was not itemized. However, considering plaintiff’s final argument to the jury as to damages and subsequent instructions by the trial judge to the jury at the latter’s request, counsel for plaintiff and defendants respectively and the trial judge have itemized the jury award as follows:
(1) Past medical expenses $ 6,434.0o[1]
(2) Past loss of wages 9,360.00 [2]
(3) Future medical expenses 9,924.00
(4) Pain, suffering, mental anguish, past, present and future 70,000.00
(5) Future loss of wages 130,000.00
Total $225,718.00
The trial judge in his oral reasons for ordering a remittitur accepted the stipulations as to past medical expenses and loss of wages and held that plaintiff had proved future medical expenses with reasonable certainty in the amount of $9,924.00, for a total of those three items in the amount of $25,718.00. However, the trial judge reduced the award for pain and suffering by $10,000.00 to $60,000.00 and future loss of earnings by $80,000.00 to $50,000.00, thus reflecting his order of remittitur of $90,-000.00 leaving the overall itemization as follows:
(1) Past medical expenses $ 6,434.00
(2) Past loss of wages 9,360.00
(3) Future medical expenses 9,924.00
(4) Pain, suffering, mental anguish, past, present and future 60,000.00
(5) Future loss of wages 50,000,00
Total $135,718.00
Defendants in their appeal contend that the judgment should be further reduced to the sum of $52,170.94 itemized as follows:
(1) Past medical $ 6,434.94
(2) Past loss of wages 9,360.00
(3) Future medical 1,376.00
(4) Pain, suffering, mental anguish, past, present and future 25,000.00
(5) Loss of future earnings 10,000.00
Total $52,170.94
While there is some dispute as to the item for future medical expenses in the amount of $9,924.00, we are of the opinion that this award is reasonable and amply supported by the record. It involves the strong possibility of at least two additional surgical procedures plus the necessity of plaintiff having to enter a hospital at least once a year for an indeterminate number of years for the purpose of kidney x-rays.
We now turn to the two major items, viz, pain, suffering, mental anguish, past, present and future; and, future loss of wages.
On April 2, 1968 plaintiff was riding as a passenger on a motorcycle when he was struck by a vehicle owned by J. Ray McDer-mott, Inc. and insured by defendant, The Travelers Insurance Company. He was immediately taken to the Lakewood Hospital in Morgan City, Louisiana, and seen in the emergency room by Dr. William H. Gadow, a general surgeon. Because of the extensiveness and orthopedic nature of plaintiff’s injuries, he was thereupon transferred to the West Jefferson General Hospital, Marrero, Louisiana. He was there seen by Dr. Joseph J. Frenselli, an orthopedic surgeon. After receiving emergency treatment, he was then taken to the Charity Hospital in New Orleans, Louisiana where his care was continued under Dr. Frenselli.
*61 His injuries were diagnosed as a com-minuted fracture of the left femur (thigh bone) and a compound, comminuted fracture of the left tibia (shin bone). Both of these fractures were severe and fragmented. In April 8, 1969, he returned to West Jefferson General Hospital. On April 11, 1968 he underwent surgery for the open reduction and internal fixation of the left femur which was accomplished by the insertion of a rod in the marrow of the thigh bone. The fractured tibia was set and plaintiff’s lower leg was placed in a short cast, with a pin inserted through his heel bone to effect a balanced skeletal traction. On April 23, it was observed that the fractured tibia was losing position and it was necessary for plaintiff to again undergo surgery to permit its resetting.
On August 6, 1968 plaintiff underwent his third major surgery. A bone graft was accomplished by the removal of bone from the hip and placing it at the site of the fracture of the tibia and holding it in position by the use of compression plates attached to the broken ends of the tibia. Following this operation plaintiff’s entire leg was placed in a “long leg cast” and was completely immobilized. On February 11, 1969 plaintiff’s cast was removed and with the continued aid of crutches, he was permitted to apply some weight to the leg.
On July 24, 1969 plaintiff underwent a fourth surgical procedure. This one was for the purpose of removing the rod that had been placed in his thigh bone and the compression plates that had been used to effect the bone graft of the shin.
We now revert to May 16, 1968 because it was on this occasion that plaintiff came under the care of Dr. Otto P. Barquín, a specialist in the field of urology. On this date plaintiff manifested a kidney disorder and commenced the passing of several kidney stones. X-rays revealed calcification of the “meaty” portion of both kidneys. For this difficulty he was hospitalized on four separate occasions. From the date of the injuries to the time of the trial plaintiff had passed a minimum of fourteen kidney stones. X-rays taken just three weeks before the trial indicated the existence of other stones within the kidneys. This specialist testified that it was impossible to determine whether or not these stones would pass voluntarily or whether or not they would have to be surgically removed in the event they grew larger than the stones plaintiff had previously emitted.
It was the uniform opinion of each of the doctors who testified that the calcification found in plaintiff’s kidneys was the result of the long period he was confined to his bed as a result of the accident.
The record is replete with assertion after assertion on the part of the experts as to the serious and painful consequences of plaintiff’s injuries to his leg and to his kidneys.
At the time of the trial on October 22, 1969, some eighteen months and three weeks following the accident, plaintiff had not obtained full flexion of his left knee or ankle and was considered to be totally disabled. His treating orthopedic specialist estimated his residual disability at the time of the trial to be from fifty to sixty percent of the left lower extremity with “some moderate clearing” over the regime of a rehabilitation procedure. This doctor was not asked to give nor did he give an estimate of future disability.
An orthopedic surgeon who examined plaintiff at the request of the defendants but who was called by plaintiff, estimated plaintiff’s disability at the time of the trial at seventy percent and concluded that via the means of supervised physiotherapy this should be reduced to a thirty to forty percent disability. This witness opined the plaintiff’s chief problem was in the foot-ankle region, where he had experienced a shortening of the tendons which caused his toes to turn up and caused him to walk in a sort of “tip-toed” fashion.
With the above facts in mind, we turn to the question of the jury’s award of $70,000.00 to plaintiff for pain and suffer *62 ing and the judge’s reduction thereof to $60,000.00. Numerous cases could be cited wherein awards have been made below and in excess of $60,000.00 to $70,000.00 for pain and suffering. However, we do not deem it necessary on this occasion to reiterate here in detail the cases cited by plaintiff and defendants in support of either the $70,000.00 awarded by the jury, the $60,-000.00 ordered by the trial judge, or the $25,000.00 urged by defendants. It suffices to say that considering the totality of the injuries sustained by plaintiff with the resulting complications and attending pain and suffering, the award by the jury of $70,000.00 was not an abuse of its discretion. C.C. Article 1934. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). It is for this reason that we feel compelled to reinstate this portion of the jury award and to disallow the $10,000.00 reduction ordered by the trial judge. Our review of the authorities cited by plaintiff and defendants with respect to the award convinces us that there was no abuse on the part of the jury.
We now turn to the question of plaintiff’s damages for loss of future earnings which were reduced by the trial judge from $130,000.00 to $50,000.00. At the time of the accident plaintiff was 21 years of age. He left school after the tenth grade to support himself. Although he preferred to work as an auto mechanic, his previous work record had been varied. Shortly after leaving school he dismantled engines in a wrecking yard. Thereafter, he went to the Job Corps for eight months to study auto mechanics, then back to Patterson, Louisiana, where he worked for a sheet metal company for $1.65 an hour. At the time of the accident he had been employed for approximately six days as a roustabout on an offshore rig for $1.65 per hour. It was plaintiff’s desire after his maximum recovery to endeavor to work as an auto mechanic. As stated above his disability at the time of the trial ranged from fifty to seventy percent of the left leg. This percentage of disability was due primarily to joint limitation, muscular and tendon deficiencies occasioned principally by the long period of immobilization by the leg, a condition generally referred to as “flexion traction”. The orthopedists agreed that the fractures themselves had completely healed and that the bones that were previously broken are now as strong as ever. However, they were also of the opinion that plaintiff would never be able to engage in the work of a roustabout or any arduous manual labor but could through extensive rehabilitation efforts prepare himself to engage in other forms of meaningful and useful occupations. They spoke in highly complimentary terms of plaintiff’s general attitude of cooperativeness and adaptability. It was this attitude on the part of the plaintiff plus the testimony of the doctors with respect to plaintiff’s ultimate ability to find useful employment that prompted the trial judge to reduce the jury award for loss of future earnings to the extent that he did.
C.C.P. Article 1813 reposes in the trier of fact the authority to modify a jury award when he deems it so excessive or inadequate as to warrant a new trial. Here we have the conscientious difference of opinion between the trial judge and the jury with respect to loss of future earnings by plaintiff. In McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183 (1961) the Supreme Court stated that the amount to be allowed for loss of earnings is impossible to determine upon any scientific basis and it is for this reason that any formula used to determine such an award must and should be rejected. The most any court can do is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either.
As in personal injury awards, the awards for loss of future wages vary according to the particular facts in each case. The spectrum covers the age of the injured, his life expectancy, his rehabilitation prospects, his past earnings, his adaptability to rehabilitation, and a whole myriad of personal factors that justify such variances. *63 Again, we do not believe that it will serve any useful purpose to recite cases cited by plaintiff and defendants in support of their respective positions. We here can do one of three things: uphold the jury award, affirm the trial judge’s decision, or inject our independent appraisal of the evidence and make our own award. We do not choose to do the latter because in our opinion the award of $130,000.00 by the jury under the particular facts of this case is grossly excessive and we do not determine that the reduction as imposed by the trial judge to the figure of $50,000.00 is an abuse of discretion on his part. It is for this reason that we conclude that an award of $50,000.00 for loss of future wages is fair and equitable and is not unduly oppressive to either plaintiff or defendants and falls well within the range of awards made in other cases, which we have reviewed to determine that the trial judge’s award was not an abuse of discretion.
Accordingly, for the above and foregoing reasons the judgment appealed from is amended by increasing the amount thereof from $135,718.00 to $145,718.00, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings.
Amended and as amended, affirmed.

. This item was subject to stipulation.

. Ibid.