BOLIN, Judge.
Kansas City Southern Railway Company instituted this suit against Government Employees Insurance Company and Travelers Indemnity Company as primary and excess liability insurers, respectively, of a 1959 Plymouth vehicle owned by Mrs. Mary K. Thielmier. Plaintiff seeks to recover the sum of $13,950.74 as damages to its roadbed and six freight cars allegedly caused by an accident on July 26, 1959, *253 when the Plymouth driven by insured’s father, W. O. Skaggs, was struck by a freight train at the intersection of Kansas City Southern main line track and an unimproved dirt road near Rodessa, Louisiana. From judgment rejecting plaintiff’s demands it appeals and we affirm the judgment of the lower court.
The case was tried before Judge William F. Woods, who retired prior to deciding the case. Subsequently the case was assigned to Judge John F. Fant, who rendered a written opinion based upon his study of the record including the transcript of testimony. In his reasons Judge Fant found the plaintiff failed to prove negligence against defendants’ insured and, in the event the insured was negligent, plaintiff was contributorily negligent.
The primary issue on appeal is whether defendants have borne the burden of proving contributory negligence against plaintiff.
The testimony of several of the witnesses is in hopeless conflict. For this reason we shall state the facts as we find them.
Immediately prior to the accident the Plymouth vehicle had been proceeding in a westerly direction along the Standard Oil Road approaching the railroad crossing. Mr. Skaggs stopped the automobile in the vicinity of a large “cross-buck” railroad stop sign, but because of grass, weeds and willow trees located along the right of way at the southeast corner of the crossing, he was unable to observe plaintiff’s train as it approached the crossing from the south or to his left.
Skaggs and several other witnesses testified the whistle was not blown nor the bell rung by the train crew as it approached the crossing; however, the train crew testified otherwise. Skaggs drove his vehicle forward until he reached a point where he could clearly see the tracks extending to his left, at which point the front end of the Plymouth protruded slightly over the railroad track. When Skaggs was thus positioned, partially on the railroad track, he and other occupants of his vehicle first observed the approaching train. For some reason, either because of fright or otherwise, Skaggs was unable to move his vehicle and the oncoming freight train, which at this time was approximately 60 feet away, proceeded forward and struck the front left fender of the Plymouth.
Plaintiff’s engineer observed the Plymouth as it was approaching the crossing but, believing the vehicle would stop, continued the forward motion of the train. When he realized the car was not going to stop, he placed the brake lever in emergency position. However, since there was only about 100 to 200 feet separating the automobile and the locomotive at this time and because the engine was pulling approximately 160 freight cars, the engineer was unable to stop the train short of the automobile, resulting in the engine striking the front portion of the Plymouth. Because of the force released by the emergency application of the brakes and the resulting shock effect, several of plaintiff’s freight cars were derailed and damaged.
Assuming defendants’ insured was guilty of negligence in failing to exercise the care required of him in approaching and proceeding onto the crossing, we find plaintiff was contributorily negligent, which bars its recovery. We are convinced from the testimony that the foliage in the vicinity of the railroad track was of such a nature as to obstruct the vision of a driver looking in the direction from which plaintiff’s train approached the crossing, and that the train crew, from a superior position in the engine cab, was in a better position to observe the physical surroundings of the area. We further conclude, as did the trial judge, that the train crew failed to prove it complied fully with Louisiana Revised Statutes 45:561 requiring:
“Every railroad company or person owning and operating a railroad in this state shall equip each locomotive engine with a bell and a whistle or horn which, under *254 normal conditions, can be heard at a distance of three hundred yards and, upon engines approaching at grade any street or highway crossing, whether or not said crossing shall be otherwise protected, shall, for a distance of not less than three hundred yards and until crossing is reached, cause either the bell to be sounded continuously or blasts of the whistle or horn to be sounded in the manner, provided by the Uniform Code of Railroad Operating Rules, unless the distance from that crossing and the start of that movement or the distance between crossings be less, in which event such warning signals shall be so sounded for that lesser distance; provided, however, that in cases of emergency said whistles or horn may be sounded in repeated short blasts.”
Our courts have generally recognized the principle stated in 65 Am.Jur.2d, Railroads, § 495 (formerly 44 Am.Jur., Railroads, § 507), as follows:
“The principle that if a crossing is unusually dangerous, ordinary care requires the railroad company to m^et the peril with unusual precautions, is particularly applicable where the dangerous condition results from obstructions to the view which prevent a traveler from seeing an approaching train until he is dangerously close to the track. In such a case, the railroad company has the duty of exercising caution commensurate with the situation to avoid collisions with travelers on the highway, as by a slower rate of speed, or by increased warnings, or otherwise, or, if an unslackened speed is desirable, by keeping a watchman on duty, or some other sufficient means of warning travelers, such as gates or other safety devices. On the other hand, the giving of the signals required by statute at crossings does not exhaust the duty of the railroad company at such a crossing.
“The question really is as to what is due care where the view of the tracks is obstructed, and it is usually left to the jury to say whether, in view of the obstructions, the company has exercised ordinary care in respect to the peculiarly dangerous condition of the crossing; whether ordinarily prudent men would have taken extra precautions; and whether such precautions were taken in the particular case.”
See Rachal v. Texas & P. Ry. Co. (La. App. 2 Cir. 1952), 61 So.2d 525; McFarland v. Illinois Central Ry. Co. (La.App. 1 Cir. 1960), 122 So.2d 845, amended on other grounds, 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246.
For the foregoing reasons the special plea of contributory negligence filed by defendants is sustained and the judgment rejecting plaintiff's demands is affirmed at appellant’s cost.