356 So.2d 507 (1977)
Jules D. FALCON, Plaintiff-Appellee,
v.
BIGELOW-LIPTAK CORPORATION et al., Defendants-Appellants.
No. 11664.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
*508 Samuel R. Cicero, Baton Rouge, of counsel for plaintiff-appellee Jules D. Falcon.
John I. Moore, Baton Rouge, of counsel for defendants-appellants Bigelow-Liptak Corp. et al.
Aubrey L. Moore, Baton Rouge, of counsel for defendants and third party defendants-appellees Joy Manufacturing Co. and Liberty Mut. Ins. Co.
David W. Robinson, Baton Rouge, for defendants and third party plaintiffs-appellees Hertz Equipment Rental Corp. and Highlands Ins. Co.
Michael Harson, Lafayette, of counsel for intervenor-appellee Liberty Mut. Ins. Co.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a suit for personal injuries and related damages sustained by plaintiff in an accident which occurred while he was inspecting a two hundred foot high smokestack. Named as defendants are Bigelow-Liptak Corporation (Bigelow), Hertz Equipment Rental Corporation (Hertz), Joy Manufacturing Company (Joy), and their respective liability insurers, Great American Insurance Co. (Great American), Highlands Insurance Company (Highlands), and Liberty Mutual Insurance Company (Liberty). Liberty also intervened as the workmen's compensation insurer of plaintiff's employer, Reynolds Metal Company (Reynolds).
The defendants answered plaintiff's petition denying all liability and, in the alternative, asserted pleas of contributory negligence, assumption of risk, and last clear chance. Hertz and Highlands filed third party actions against Bigelow for indemnification and, alternatively, against Joy and Liberty for breach of warranty of fitness.
The trial judge, with detailed written reasons for judgment, found for plaintiff but against Bigelow and Great American only and rendered judgment awarding him $65,000.00 for physical injuries, pain and suffering and future medical and $216,870.05 for loss of future earnings, subject to Liberty's claim (as intervenor) for $10,040.32 for workmen's compensation benefits paid to the plaintiff. It is from this judgment that Bigelow and Great American *509 have appealed. Plaintiff has answered the appeal asking that the award of $65,000.00 for personal injuries be increased. We affirm as amended.
On July 9, 1973, the date of the accident, Reynolds had contracted with Bigelow to refurbish one of the former's smokestacks. In the performance of their responsibilities under the contract Bigelow rigged an air tugger hoist, through a series of pulleys and sheaves to a cage inside the smokestack. The cage, used to lift personnel inside the stack, was raised and lowered by cable by engaging the air powered tugger. The tugger, manufactured by Joy, was rented to Bigelow by Hertz.
Plaintiff, a production supervisor with Reynolds, and two Bigelow employees were to inspect the interior of the stack and designate areas that needed repairs by marking them with spray paint. The cage was equipped with an intercom for communication to another Bigelow employee, one Roy Burleigh. The tugger was operated by Robert Forbes, also a Bigelow employee. Forbes would raise, stop or lower the cage in accordance with the orders he received from plaintiff through Burleigh.
Plaintiff and his two fellow passengers had surveyed approximately one hundred eighty feet of the stack from the bottom to the top when plaintiff gave the instruction to be raised again. Suddenly and without warning the cage plummeted to the cement floor of the stack, causing critical injuries to all three of its occupants. Of course, the big issue of fact is what caused the cage to fall.
The tugger consists of a large drum, activated by air pressure through a series of gears. On the right is a lever which when pushed forward winds the cable onto the drum, thereby lifting the cage and, when pulled back, releases the cable from the drum, thereby causing the cage to descend. On the left of the drum is a hand brake. Also on the left (and attached to the gear housing) is a dog clutch. When the dog clutch is turned ninety degrees and pulled out, the gears are disengaged and the drum will unwind freely. It is undisputed that vibration alone will not cause the dog clutch to become disengaged and that it has to be manually released.
The lifting unit, including the tugger, cables, personnel cage, and air compressor, was assembled under the direction of Herbert Frayling, a Bigelow supervisor.
Plaintiff, Jules D. Falcon, testified that they had made from eight to ten stops, consuming about twenty minutes, when he gave the order to be raised again. The cage made a slight upward motion and then commenced its sudden fall. Nothing unusual had previously occurred and the intercom and light on the cage were in good working order. He could offer no explanation for the failure. His testimony is corroborated by that of Walter R. Thomas and Albert Richard, his fellow occupants.
Forbes testified that he had been operating tuggers of the same or similar type for twenty-eight years and that he was thoroughly familiar with its operation and characteristics. He stated that when he was given the word to life the cage, he released the brake and pushed the hand lever forward. He immediately noticed that the drum was not responding. To the contrary, it began to unwind with increasing rapidity. He then applied force to the handbrake with both hands, but to no avail. He explained that when the operational lever is just released, a spring mechanism causes the gears to revert to a neutral position. He stated that on previous occasions he had left a tugger of this type in a neutral position with a load of material suspended in air and that the drum would not automatically unwind when the gears were in a neutral position. He was adamant in his testimony that he did not release the dog clutch or endeavor to lower the cage by the handbrake alone. He could not explain how the accident happened except to say that something "tore up in it or something happened," meaning that there was a mechanical failure of the unit.
About a week following the accident the tugger was examined by four experts: Andrew McPhate for Hertz; Wiley Poole for Joy; Robert G. Osgood, a senior production *510 engineer, for Joy; and, Oscar W. Albritton for Bigelow. A series of simulated tests were run which disclosed that the machine was in good working order. After the tests, the tugger was completely disassembled and no broken or defective parts were noted. It was the opinion of McPhate and Poole that the dog clutch had been manually removed which permitted the drum to spin freely. Osgood opined that the operator had endeavored to lower the cage with only the hand brake. Albritton was of the opinion that the loss of air (power) from the compressor caused the cage to freefall.
The trial judge correctly held that the circumstances of this case give rise to the application of the doctrine of res ipsa loquitur. This doctrine does not modify the general rule that negligence is not to be presumed but that an inference of negligence is drawn when the surrounding circumstances are of such a nature that, absent a justifiable explanation, the only fair and reasonable conclusion is that the accident was due to some omission or want of care on the part of one or more of the defendants. Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 544, 97 So.2d 389 (1957); Milton v. State Health and Social and Rehabilitation Services Administration, 293 So.2d 645 (La.App.1st Cir. 1974). The doctrine encompasses the following essentials: (1) a superior knowledge on the part of the defendant(s) as to the cause of the accident; (2) the absence or unavailability of direct evidence of negligence; (3) the existence of a sufficient duty on the part of defendants) to use due care; and (4) proof of the accident or injury and defendants relation thereto. Milton v. State Health and Social and Rehabilitation Services Administration, above.
In resolving the conflict in the testimony, noted above, vis-a-vis, res ipsa loquitur, the trial judge in his written reasons for judgment stated:
"The Court has reviewed the testimony taken from the various expert and law witnesses as to where the responsibility for the accident should rest. Reviewing this testimony reveals the following possibilities for the injury: (1) a sudden air power failure; (2) manual removal of the dog clutch; or (3) removal of the dog clutch without human involvement (i. e., disengagement caused by vibrations being emitted from the machine itself). Although an analysis of these theories, in light of the testimony, suggests one cause to be more plausible than the others, (i. e., manual removal of the dog clutch), there is no conclusive or direct evidence of responsibility for the negligent injury. The Court also finds that the evidence suggests that the first possibility is the least likely to have occurred. The evidence further indicates that the last possibility is, at best, speculative and unsupported by the test results. The Court is therefore constrained to hold that the above combination of circumstances gives rise to the doctrine of res ipsa loquitur (discussed supra). In so holding, the Court finds the consequent inference that the most plausible cause of the accident was Bigelow's negligence. Thus, the duty devolved upon the defendant to establish circumstances from which it could be reasonably inferred, with equal plausibility, that the accident did not result from its negligence. Considering all the testimony, specifically that of Forbes and Burleigh, the Court finds that defendant, Bigelow, has failed to establish the requisite circumstances to establish, with equal plausibility, that the accident was not caused by its negligence. The Court further finds Bigelow's negligence to be the proximate cause of plaintiff's injuries."
We find no manifest error in the conclusion reached by the trial judge. Canter v. Koehring, 283 So.2d 716 (La.1973); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). However, we would not restrict the occurrence of the accident to the three possibilities listed by the district court. We are satisfied that the clear preponderance of the evidence is to the effect that there was no defect in or malfunction of the tugger from a mechanical viewpoint. This leaves only the remaining possibility of human error. Bigelow, who was wholly responsible *511 for its installation and operation, has failed to exculpate itself from the presumption of negligence.
The evidence further reflects, and Joy admits, that this particular type of tugger is unsafe for use as a personnel hoist. On this basis, liability is sought to be imposed against Joy for its failure to warn potential users against such use and against Hertz for renting the tugger as a personnel hoist.
On these assertions, the trial judge stated:
"Frayling admitted that when he telephoned Hertz to rent the tugger, he did not specify the purpose for which it would be usedto raise personnel. By the same token, Hertz did not inquire of Bigelow as to the purpose for which the winch was rented. The Court finds that under these circumstances, Hertz owed no duty of inquiry to Bigelow. To impose this duty upon Hertz, absent a reason for believing that such an inquiry should be made, would be unreasonable. Frayling gave Hertz no reason to believe that an inquiry was necessary; thus, Hertz acted reasonably under the circumstances.
"Parenthetically, it should also be noted that according to the preponderance of the expert testimony, an experienced superintendent such as Frayling should have specified the type of hoist he desired and should have realized the dangers inherent in a utility hoist used to haul personnel. Therefore, the Court finds that Hertz was not negligent in its maintenance and rental procedures. Assuming, arguendo, that Hertz was negligent and such negligence was a proximate cause of the accident, it would have been entitled to indemnification under the express agreement signed by Mr. Frayling. The Court, however, will pretermit further discussion of this issue since negligence on the part of Hertz has not been proven.
"Joy, the manufacturer of the hoist, is alleged to be negligent in its defective manufacture and its failure to warn of the danger of using the hoist to raise personnel. This Court concludes, based upon the expert testimony, that the air tugger was structurally sound both before and after the accident. Thus, the Court will address itself to the alleged duty to warn.
"Defendant Bigelow cites numerous cases standing for the proposition that a manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who, without fault on his part, sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated.
"The Court is cognizant of the jurisprudence referred to above. However, these cases presuppose a defect in the design or manufacture of the article. The Court has not been presented with one scintilla of evidence tending to show the air tugger was defective in manufacture or design. To the contrary, the evidence preponderates that the machine was structurally sound in all respects.
"Bigelow's argument that a warning plate should have been affixed to the subject hoist, in the Court's opinion, is simply an attempt to beg the question. Assuming arguendo, a warning plate should have been so attached, the failure to do so can not be considered the proximate cause of the accident. The evidence preponderates that it was common knowledge in the construction and maintenance trade that the subject tugger should not be used to lift people. For these reasons, the Court finds a lack of negligence with respect to Joy."
We agree.
As noted above, the trial judge awarded plaintiff the sum of $65,000.00 "for past, present and future physical and mental pain and anguish and future medical expenses" and $216,870.05 for loss of future earnings, for a total award of $281,870.05. Plaintiff has answered the appeal asking that the award of $65,000.00 be increased to $150,000.00 and that the judgment be otherwise affirmed. Bigelow argues that the award of $65,000.00 is excessive and should *512 be reduced to $40,000.00 and, for reasons hereinafter more fully discussed, the award for loss of future earnings should be eliminated altogether.
As a result of the accident, plaintiff sustained extensive injuries to his lower extremeties, including his feet, ankles, knees, compression fractures of L-2, L-3, and L-4, fracture dislocation of the sternum, and lung contusion. He remained in intensive care for four days and on July 16, 1973, his treating orthopedist performed an open reduction and internal fixation of the left ankle and right foot. Both legs were placed in hard casts at that time. Because of severe injuries to the back, he was placed in a back brace which he wore for some eleven weeks. He was discharged on July 23, 1973.
On September 10, 1973, plaintiff was readmitted to the hospital for the removal of the leg casts and pins from his feet. He was discharged on September 14, 1973.
On October 1, 1973, plaintiff was admitted to the Baton Rouge Medi Center for physical therapy, where he remained until November 5, 1973.
In January of 1974, plaintiff returned to light duty. However, when he resumed normal work duties in March of 1974, he encountered serious discomfort and pain associated with problems with his right knee. In May of 1974, he underwent surgery for the removal of the medial miniscus and cartilage repair of the right knee.
Plaintiff's treating orthopedist rated his permanent disability as ten percent of the left ankle, fifteen percent of the right foot, and ten percent of the right knee. The doctor was of the opinion that Falcon had reached maximum recovery with the possible exception of future surgery on the left knee. Any change in his condition would be in the nature of further degeneration of the left ankle, right knee and foot. Throughout the period of plaintiff's recovery and up to the date of the trial on April 13, 1976, plaintiff was rarely free from some type of pain or discomfort.
It was stipulated that his medical expenses exceeded $10,000.00.
With respect to the items of damages for which the $65,000.00 award was made, we do not find that such an award constitutes an abuse of the much discretion accorded the trier of fact. C.C. Art. 1934(3).
We turn now to the award for loss of future earnings.
Plaintiff is a production supervisor for Reynolds. He is generally charged with the responsibility of ascertaining the availability of raw materials for his employer's production units and their overall operation. As a consequence, it is necessary that he traverse a large portion of Reynold's plant (approximately twenty acres) daily, which includes considerable walking and climbing. Accordingly, plaintiff contends that he can only perform his functions under considerable pain and discomfort and with the assistance of a co-supervisor. Inherent in this view is the position that at an early date he will be forced to either seek a disability retirement or other employment.
On the other hand, Bigelow argues that plaintiff's job description and duties are the same now as they were at the time of the accident; and, that his salary has not only continued since the date of the accident but that he is now earning in excess of $4,000.00 more per year than he was at the time of the accident. Bigelow further argues that the record fails to show that plaintiff's job and future earnings are in jeopardy.
The medical evidence is to the effect that plaintiff has reached maximum recovery and that any change in his condition would be a further degeneration of his right foot and knee.
The trial judge held that plaintiff, who was forty years of age at the time of the accident, has a work-life expectancy of twenty-four years; that he was earning $18,000.00 annually at the time of trial; and, that his future earning capacity, i. e., loss of wages, has been reduced by two-thirds. The judge a quo felt that he "must" apply R.S. 47:2405 and, using the table therein provided, computed plaintiff's *513 loss of earning capacity thusly: $18,000.00 × 24 = $432,000.00 × 753021[1] = $325,305.07 2/3 = $216,870.05. It is obvious from his reasons for judgment that the district judge intended to discount plaintiff's loss of earning capacity "at the rate of 6% compound interest annually" which is the rate provided for in R.S. 47:2405. However, it is apparent that the trial judge erred in interposing the discount figure of .753021[2]. The correct factor (6% at 24 years) to be used should have been 12.55036[3]. Thus, adopting the findings of the trial judge as to earnings, disability, and discount, his computation should have been: $18,000.00 × 12.55036 ÷ 2/3 = $150,604.32. Thus, we accept this latter figure as the proper amount intended by the trial judge.
It is axiomatic that awards for future earnings will vary according to the facts and circumstances of a particular case. Age, life expectancy, rehabilitation prospects, past earnings and adaptability to rehabilitation must be considered. Robison v. Garnett, 238 So.2d 58 (La.App.1st Cir. 1970), writ refused. Such awards are speculative to some extent in nature and all the court can do is to exercise sound judicial discretion and award an amount that, all circumstances considered, seems just and fair to both litigants and not unduly oppressive to either. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968).
Generally, an award for future earnings can be based on the difference in one's earnings before the accident and his earnings after the accident because the result of the injuries are immediate. However, this is not always the case. It is for this reason that one's loss of earnings and/or earning potential should not necessarily be based on actual or on temporary loss of income. Loss of future earnings should also encompass the loss or reduction of the ability or capacity to do something for which a person may be and has been paid, according to that person's experience and education.
While the plaintiff in the instant case has in fact enjoyed an increase in salary over the intervening years following the accident, the evidence is quite clear that his work-life expectancy of twenty-four years has been reduced to five to ten years. Undoubtedly, he is highly trained in his particular field and is considered a valued employee, but the unalterable fact remains that notwithstanding his determination to work, he will undoubtedly be forced to retire or seek other employment with the uncertainties that attend the latter choice.
The Supreme Court has on occasion disapproved the use of formulas in arriving at an award for loss of future earnings. McFarland v. Illinois Central Railroad Co., 241 La. 15, 127 So.2d 183 (1961). However, we do not believe that it is impermissible to use a formula to discount to present value, as we have done above, once the loss of earnings has been determined. Robinson v. Graves, 343 So.2d 147 (La.1977); Guidry v. Canal Insurance Co., 313 So.2d 860 (La. App.1st Cir. 1974). In fact, the formula used above was approved by us in Triche v. Commercial Union Insurance Co., 329 So.2d 784 (La.App.1st Cir. 1976). For these reasons and the above reasons, we find that the award to plaintiff for future loss of earnings should be and we set the same at $150,000.00.
Accordingly, for the above reasons, the judgment of the district court is amended by reducing the total amount thereof from the sum of $281,870.05 to the sum of Two Hundred Fifteen Thousand and 00/100 ($215,000.00) Dollars. In all other respects the judgment of the district court is affirmed at appellant's costs.
AFFIRMED AS AMENDED.
NOTES
[1] The difference between 1.000000 and .246979.
[2] Ibid.
[3] Lake's Monthly Installment and Interest Tables, (6th Ed.) Present Value $1. per Annum at Compound Interest $1. Deposited Annually for 1 to 50 years (Compound Discount Table)