LOTTINGER, Judge.
Plaintiff, Morille T. Guidry, was injured when he was thrown from a labor bus which left the road and overturned. Suit was filed against the bus owner’s liability insurer, Canal Insurance Company. Defendants admitted liability and the case was tried on the issues of plaintiff’s injuries and quantum. Judgment was rendered in favor of the plaintiff, Morille T. Guid-ry, and against the defendant, Canal Insurance Company, in the sum of $79,806.90, together with legal interest from date of judicial demand and all costs of the proceeding. In his written reasons for judg- *861 raent, the trial judge itemized plaintiff’s award as follows:
For physical pain and suffering $ 7,500.00
For mental suffering 2,500.00
For past medical expenses 1,666.90
For recommended therapy 3,000.00
For the period of total loss of earnings 34,000.00
For loss of future earnings 31,140.00
TOTAL AWARD $79,806.90
Both parties appealed from the amount of the award set by the trial judge. Plaintiff filed a motion to dismiss defendant’s appeal on the ground that defendant failed to timely file its appeal bond, which motion was denied at plaintiff’s costs.
Inasmuch as defendant stipulated liability, it is not necessary to go into the nature of the accident which gave rise to this case. We will first consider some background information on plaintiff and then go into the nature of his injuries. Morille T. Guidry was born in 1922. He left school in the third grade at the age of 14 to work in the fields but later completed his education in the service. After getting out of the service, he completed a vocational training course in carpentry and, from 1946 until around 1963, he did general carpentry work. At that time he went to work as a marine carpenter for Hope-man Brothers and its predecessor where he was continuously employed until the date of the accident in question. He described his job as that of being a marine carpenter who did interior finishing work, that is the installation of paneling, floor tile, and ceiling tile. He also had to climb ladders and install fixtures. In 1970, Mr. Guidry earned $8,263 or just under $700.00 per month. In 1971, from January 1st until he was hurt on September 24th, his earnings increased to over $800.00 per month or a total of $7,168.00. Prior to the accident in question, he was in good health, had never had any serious injuries or illness and no hearing difficulties or problems. Then on the afternoon of September 24, 1971 he suffered the injuries in question when he was thrown out of the labor bus in which he was riding.
Mr. Guidry was taken from the accident by ambulance to St. Joseph’s Hospital where Dr. Joseph Powell took over plaintiff’s care in the emergency room. He initially diagnosed plaintiff’s injuries as including (1) a compression fracture of the 12th thoracic vertebrae, (2) accompanying low back strain and soft tissue damage and (3) a fractured clavicle or collar bone. His pain was severe. Plaintiff’s hospital convalescence was further complicated when he developed paralytic ileus which is a condition where the intestinal tract ceases to function and the patient has to be fed intravenously and waste products removed through tubes inserted in the body. He was hospitalized until October 7, 1971 at which time he was given a narcotic for pain, a back brace to wear and he was told to remain in bed. We now quote from the written reasons for judgment for the trial judge.
“The doctors are all in accord as to the nature of his injury, and while their opinions vary somewhat as to the extent of permanent disability, the court feels that the plaintiff has proved by a preponderance of the evidence that he will never be able to return to strenous physical labor, but must be satisfied in the future with light work.
“From the court’s observation of the plaintiff during his testimony, and from the expert analysis of Dr. Irving Fos-berg, based on the psychological tests which he gave the plaintiff, plaintiff is a man of very limited intelligence, whose capabilities were limited to physical achievement. The testimony and analysis of Dr. Fosberg was completely corroborated by the testimony of Dr. Marvin Miller, an expert in the field of psychiatry, and their testimony convinces the court that plaintiff’s physical disability was compounded by an anxiety de *862 pressive reaction. Simply put, his life prior to the accident was physical in nature and he could express himself and derive satisfaction only through this outlet. The injury which prevented his normal physical expression resulted in a severe mental depression, and even though his injury has stabilized to what would be no more than a ‘nagging back ache,’ unless he attempted strenous labor, he has been incapable of performing at even a lower level because the depression prevented him from making the necessary effort. Being incapable of earning a living with mental labor, and being physically unable to perform physical labor because of the injury compounded by the anxiety overlay, he has suffered serious economic loss . . . . ”
In addition, plaintiff complained that approximately two. weeks after the accident he began to have a constant ringing noise in both ears which he never had before. However, he did not mention this problem to a doctor until approximately three months after the accident.
Plaintiff complains that the trial court was in error in failing to make any award for plaintiff’s auditory problem, in awarding only $7,500.00 for physical injuries, in awarding only $2,500.00 for emotional injuries and assessing future economic loss at only $31,140.00. Defendant, who also appealed, complains that the trial court made an excessive award in awarding $31,140.00 for future economic loss.
While it is. true that the Lower Court did not discuss the hearing loss in its written reasons for judgment, the Lower Court did make an award for physical pain and suffering. Apparently plaintiff believes that there should be another category for auditory injury. We believe that the Lower Court probably considered plaintiff’s au'ditory problems in the category of physical pain and suffering, and therefore will proceed to plaintiff’s complaint of the Lower Court awarding $7,500.00 for plaintiff’s physical pain and suffering and $2,500.00 for mental suffering.
The nature of the injuries sustained by Mr.. Guidry is undisputed. He sustained an uncomplicated fracture of the left clavicle that healed without residual disability within weeks of the accident. He was treated for this fracture along with the T 12 compression fracture with bed rest only. By March 3, 1972, the compression fracture was well healed although Mr. Guidry continued to have complaints of lower back pain. The T 12 compression fracture has resulted in some permanent physical function disability-estimated at 20% to his back according to Drs. Powell and Wickstrom and 10% to his entire body according to Dr. Gary. However, all of the medical experts agree that, with regard to plaintiff’s physical condition, he can return to gainful work of a type less strenuous than he was doing before the accident.
We have already quoted the findings of the trial judge as to plaintiff’s mental suffering from his written reasons for judgment. We might add that although Dr. Marvin Miller recommended rehabilitation, both in terms of work activity and seeing doctors at the local mental health clinic at either Raceland or Donaldsonville, the plaintiff failed to follow up on this recommendation. We note that plaintiff has not sought treatment of any kind in order to minimize his damages due to his mental condition.
The Supreme Court of Louisiana has discussed the award of general damages very recently in the case of Anderson v. Welding Testing Laboratory, Inc., 304 So. 2d 351 (1974) from which we quote:
“The trier of fact is granted much discretion in the award of general damages, i. e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of *863 life or life-style which cannot really be measured definitively in terms of money. Civil Code Article 1934(3) and the decisions to be cited below.
“Our jurisprudence has established certain principles of review of such awards by the appellate courts, in their performance of the fact-review function assigned to them by the Louisiana constitution. La.Const. Art. VII, Sections 10, 29 (1921, as amended in 1958). These principles, as extensively summarized recently in Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974), include:
“The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages.”
We have reviewed several cases cited by both parties, and because of the circumstances and nature of the case before us find no abuse of the “much discretion” which the trial court has in assessing general damages. In light of the quotation from the Supreme Court setting out the jurisprudence of Louisiana, we do not see any reason to change the award of the Lower Court for physical or mental pain and suffering and injury.
Both plaintiff and defendant have appealed from the award of $31,140.-00 made by the Lower Court for the loss of future earnings. Plaintiff believes this amount should be increased; defendant believes it should be decreased. We quote from the written reasons for judgment of the Lower Court as they pertain to this point:
“While the plaintiff has established to the satisfaction of the court that he can never return to heavy labor, and thus earn the kind of money he earned before the accident, it appears equally obvious that in spite of his permanent disability and limited mental capacity, he should, after going through the recommended therapy, be able to reenter the labor market as an unskilled laborer. His inability to function as a skilled laborer will, of course, result in less income, but in today’s labor market, even doing light work as an unskilled laborer should produce a weekly income of $100.00 or half of his former earning ability.”
The trial judge then took the work life expectancy of plaintiff and arrived at his estimate of loss of future earnings, which figure he discounted to present value by use of a mathematical formula.
Plaintiff complains that the Lower Court has used a formula in computing loss of future earnings and to do so is contrary to Louisiana law, especially as recited in the case of McFarland v. Illinois Central Railroad Co., 241 La. 15, 127 So. 183 (1961). In that case the Court of Appeal increased an- award to plaintiff apparently primarily from the application of a mathematical formula. Our Supreme Court said that it disapproved of use of such a formula in awarding damages.
The only function of the formula used by the trial judge was to discount to present value the amount which he found the lost earnings of plaintiff to be. He used no formula to compute the loss of future earnings. Furthermore, his award in *864 this regard seems fair to plaintiff and defendant under the facts of the case. We do not find that either party has been able to demonstrate to us that the trial court has abused its discretion in fixing these damages.
For the above and foregoing reasons, the judgment of the Trial Court is affirmed, the defendant-appellant, Canal Insurance Company, to pay all costs, including the costs of this appeal, except any costs in connection with plaintiff’s motion to dismiss defendant’s appeal which are to be paid by plaintiff.
Affirmed.