SARTAIN, Judge.
Mrs. Margaret S. Stagg was injured when she struck and fell over a flatbed dolly while shopping at a T G & Y Store in Baton Rouge, Louisiana, on November 5, 1974. She is joined in this action by her husband. Their respective claims for personal injuries and special damages were rejected by the trial court. We affirm.
The defendants are City Products Corporation, the owner and operator of T G & Y Family Centers, Ozone Pet Supply Company, Inc., a furnisher of certain pet supplies to the store, and their respective liability insurers.
The evidence established that the store is laid out with an aisle traversing its width across the front and rear walls. Between these main aisleways there are merchandise counters running parallel to one another from the front to the rear of the store. Along the rear wall are various pet supplies which are displayed on shelves and brackets mounted on the wall. Shortly before the *364 accident a representative of Ozone Pet Supply had made a delivery of supplies. In doing so, he had used the flatbed dolly and had placed his supplies in the rear aisleway at the base of the shelves upon which they were to be displayed. A representative of the store would check the items in, price them, and put them on the display shelves. He could not remember whether he returned the dolly to the storage area after he had used it. He had departed from the store anywhere from thirty minutes to an hour before Mrs. Stagg fell.
Mrs. Virginia B. Jones was an employee at T G & Y. At the time of and just prior to the accident she was placing supplies from Ozone Pet on the display shelves. She had previously checked them in from that company. She recalled its representative making two trips and using the dolly on at least the first trip. She could not recall whether the dolly was used on the second trip. Nor does she recall the dolly’s presence in the aisle prior to the accident. She admitted that her instructions were to take the dolly back to the storage area when it was not in use “so customers would not fall on it.” She recalled Mrs. Stagg coming up to her and asking where the dog collars were located. She directed Mrs. Stagg to the collars which were some fourteen feet down the aisle from her. Several minutes later she heard Mrs. Stagg call out and looked around to see that she had fallen. On this occasion, she noticed that the dolly was about two to three feet from the collars. No one else was present.
Mrs. Stagg testified that when she arrived at the store she proceeded down the far right aisle to the rear. There she encountered Mrs. Jones and asked her where the collars were. The latter responded “over there.” She then walked down the aisle some fifteen to sixteen feet to the collar display. At first she couldn’t find the size she desired but with further search she did. She estimated that she stood there examining various dog collars for a period lasting from five to ten minutes. Having selected the collar of her choice she turned to retrace her steps and explained, “as I stepped out into the aisle I was knocked down hard.”
There can be no question about the fact that Mrs. Stagg verily believes that the dolly or cart was actually pushed into her and that it was not in the aisle when she first passed its location. She so alleged in her petition, reiterated it in her pretrial order, and affirmed it in her testimony.
“Q. As you went down to the dog collars, did you notice the cart?
A. There was no cart — I didn’t see one; I didn’t see one at all.
Q. All right.
A. In fact, if there had of been a cart, I would have had difficulty getting around it.
Q. Okay.
A. Because I was going down the middle of the aisle; I walked down the center of the aisle myself, and if there had been a cart I would have had to gone around it to have proceeded on down the aisle.”
* * * * * *
“Q. If the pushcart had been there, would you have seen it?
A. I think I would because the thing was pretty wide; you know, it wasn’t a little narrow cart. You couldn’t help but see a thing that large, I would think.”
* * * * * 5j*
“Q. Okay. I take it from this fact, that is, you saw the pushcart right after your accident, that you deduced that you tripped over the cart?
A. Well, I didn’t deduce that I tripped over it; I felt like it had been pushed into me because it was a jolt, it wasn’t like — like if you trip over a chair or something, you could kind of brace yourself or hold onto something. I was just — I struck hard and if you trip over something you’re not struck, you — you’re—I don’t know how to discribe it—
Q. Your position then—
A. —it’s different.
*365 Q. —is that this cart was being pushed by someone, or at least was moving into you at the time?
A. Yes. I felt that. That was my feeling. I didn’t see it; I felt that.”
Photographs offered in evidence together with the stipulation as to the size of the dolly conclusively show that it is a rather large object. The bed, which rests on four wheels, nine and one-half inches from the floor, measures four feet in length by two feet three inches in width. The handle at one end is three feet one and one-half inches in height. The aisle in which the dolly was allowed to remain is five feet five inches wide. Thus, the dolly itself consumed almost one-half of the area of the aisle.
On these facts the trial court, in its oral reasons for judgment, stated:
“Getting to the question of how the accident happened, it doesn’t really seem to be important to the Court whether the cart was there or not there at the time Mrs. Stagg first walked up to the counter where the dog collars were located. The thing that does impress this Court is the fact that we have a rather large contrivance, two feet three inches wide, four feet long, and one end of it containing a handle with a great deal of metal which extends up past a person’s waist. Certainly, this type thing, if one is looking, and as admitted by the plaintiff, can very easily be seen. So, we have to ask this question. Even assuming negligence on the part of TG&Y and its insurer, what happened? Why didn’t Mrs. Stagg see this cart or dolly as she turned around to walk out? She testified she took one or two steps, not more than two steps I believe she said; and, as the other evidence indicates, she struck or was struck by the handle of the dolly. It’s completely mysterious as to why Mrs. Stagg, had she been looking or keeping any kind of a reasonable lookout, would not have seen the dolly there.
“I realize that the lady has been hurt, she has a residual disability and it’s been very painful, very trying for her. However, we don’t think the evidence preponderates to establish liability on the part of TG&Y and its insurer. And, even assuming that it did, we would have to say that Mrs. Stagg was guilty of contributory negligence in not maintaining a proper lookout, in not watching where she was walking. It’s inconceivable to me that someone can walk into the handle end of this dolly, which we think she did, and not first see it. She may have been in a hurry. I don’t know what her situation was at the particular time, but the law is not to the effect that just because it was there and just because it was owned by TG&Y they are liable. There is no proof that any employee of TG&Y put it in motion or struck Mrs. Stagg with it.
“I think a logical deduction would be that the cart was there when Mrs. Stagg walked up to the dog collars. I think it’s logical to deduce that no one shoved it into her. She saw or should have seen the handle. Had there been a human at the other end of the cart pushing it, surely she would have gotten a glimpse of the person. I don’t think anybody pushed it. I think Mrs. Stagg turned around and walked into the cart.”
We find negligence on the part of the defendant, City Products. We believe that its employees were negligent in leaving the dolly in the aisle at a time when it was serving no useful purpose and unattended. Obstructions in the aisles create a hazard to a customer’s safety. Williams v. Liberty Stores, 148 La. 450, 87 So. 233 (1921); and Paxton v. Ballard, La., 289 So.2d 85 (1974).
However, we do agree with the trial judge in his conclusion that had Mrs. Stagg maintained “any kind of reasonable lookout” she could and should have seen such a large “contrivance.” She was retracing the same path she had used upon entering the store. She collided with the handle of the dolly which consists of a large metal crossbar supported by uprights and three additional metal crossbars, all of which reach a height slightly in excess of three feet. She did not stumble or fall over a low object such as may be classified as a trap. Paxton *366 v. Ballard, above; and Robnett v. Great American Insurance Co. of New York, 187 So.2d 152 (2nd La.App., 1966, writs refused).
We wish to emphasize that our holding of contributory negligence on the part of Mrs. Stagg is based entirely on the fact that she was not turning a corner or passing the dolly for the first time. To the contrary, she had previously passed this large object just minutes before in the same aisle and in the immediate vicinity of the area in which she was selecting her merchandise.
With respect to negligence on the part of Ozone Pet Supply, Inc., plaintiffs’ brief contains no assignment of error nor is any argument advanced relative to the trial judge’s dismissal of their claim against this defendant.
For these reasons, the judgment of the district court is affirmed at appellants’ costs.
AFFIRMED.
CHIASSON, J., dissents and assigns reasons.